**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL MACHINERY AND | ) | Case No. 1:21-cv-01422 |
| EQUIPMENT COMPANY D.B.A. | ) | |
| FEDERAL EQUIPMENT COMPANY | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S SECOND AMENDED** |
| vs. | ) | **COMPLAINT** |
| | ) | |
| MICHAEL TOUSEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

NOW COMES Plaintiff, Federal Machinery and Equipment Company D.B.A. Federal Equipment Company, ("Plaintiff" or "Federal") by and through undersigned counsel, and for its Amended Complaint against Defendants, Michael Tousey ("Tousey"), NantWorks, LLC ("NantWorks"), NantKwest, Inc., ("NantKwest") and ImmunityBio, Inc. ("ImmunityBio"), states as follows:

**THE PARTIES**

1.      Federal is a duly organized corporation incorporated under the laws of the State of Ohio and maintains its principal place of business at 8200 Bessemer Avenue, Cleveland, Ohio, in Cuyahoga County, Ohio.

2.      Defendant Tousey is an individual in the State of California who, upon information and belief, resides at30259 Palos Verdes Drive East, Rancho Palos Verdes, California, 90275 and is currently employed by ImmunityBio. At the time of the events giving rise to this lawsuit, Tousey was a resident of the State of Ohio and resided at 29644 Lake Rd, Bay Village, OH 44140 and 31110 Narragansett Lane, Bay Village, OH 44140.

1

3.      NantWorks, at all times pertinent hereto, was and is a duly organized and validly existing corporation with its principal office located at 9920 Jefferson Boulevard, Culver City, California 90232.

4.      NantKwest, was, until on or about March 2021, a duly organized and validly existing corporation with its principal office located at 3530 Johns Hopkins Drive, San Diego, California 92121.

5.      ImmunityBio, at all times pertinent hereto, was and is a duly organized and validly existing corporation and subsidiary (or related or affiliated entity) of NantWorks with its principal office located at 9920 Jefferson Boulevard, Culver City, California 90232.

6.      Hereinafter, NantWorks, NantKwest and Immunity Bio will be collectively referred to as (the "Corporate Defendants").

## JURISDICTION AND VENUE

7.      Federal brings this action pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. This Court possesses subject matter jurisdiction over Federal's claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

8.      This Court possesses supplemental jurisdiction over Federal's remaining claims pursuant to 28 U.S.C. § 1367.

9.      This Court possesses personal jurisdiction over all Defendants because the claims in this action arise out of activities that Defendants performed in this District and Division. Tousey worked for Plaintiff and acquired Plaintiff's trade secrets in this District and Division. Corporate Defendants became acquainted with Tousey while he worked for Federal in this District and Division. Additionally, as discussed below, Tousey emailed and downloaded certain confidential and proprietary information belonging to Plaintiff from his Federal email address to his personal

email address without business justification to do so, and such information was at all times located and stored on servers located within this District and Division. All Defendants have maintained continuous and systematic contacts with this District and Division. Further, the majority of Federal's claims arise out of conduct governed by an Ohio forum selection provision.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Federal does business in the District and Division, Tousey was employed by and performed work on behalf of Federal in the District and Division, and most of the events that give rise to claims asserted in this action occurred in the District and Division.

11.     Venue is further proper pursuant to 28 U.S.C. § 1391(b), as Plaintiff and Defendants have continuous and systematic contacts with this District and Division.

## FACTUAL ALLEGATIONS

12.     Federal is a used equipment dealer that specializes in processing and packaging equipment, particularly pharmaceutical and chemical manufacturing equipment.

13.      Federal also services the pharmaceutical, nutraceutical, and dietary supplement industry via specialized training, consulting, seminars, troubleshooting, and purchasing of specialized equipment.

14.     Tousey is a former employee of Federal who exercised a significant role with Federal as a high-ranking employee and trusted fiduciary.

15.     NantWorks is a holding company that specializes, in part, in technology and healthcare.

16.     NantKwest was a constituent company of NantWorks that specializes in healthcare.

17.     ImmunityBio is a company that specializes in immunotherapy and recently merged with NantKwest. Upon information and belief, NantKwest now operates under the name ImmunityBio.

18.     On or about October 31, 2012, Federal entered into an agreement (the *"Purchasing Agreement"* attached as Exhibit A) to purchase half of Dorado International, Inc., a consulting, training, and equipment dealer specializing in manufacturing of pharmaceuticals, nutraceuticals, vitamins, and related products. Tousey owned Dorado International, Inc. and did business as Techceuticals.

19.     From that point forward, Federal and Techceuticals partnered under the name Techceuticals, LLC, and Tousey worked extensively with and for Federal.

20.     Tousey assumed the title of Technical Director and CEO of Techceuticals, LLC.

21.     As Technical Director and CEO, Tousey was the head of the Techceuticals, LLC arm of Federal, making him a fiduciary.

22.     During the time period in question, Federal, with Tousey's assistance, developed a niche area of expertise regarding training and manufacturing of solid dose tablets and capsules.

23.     This area of expertise primarily impacts the pharmaceutical business, with solid dose training and manufacturing being used for oral dose pharmaceuticals.

24.     Federal, with Tousey's assistance, developed multiple training courses and methodologies regarding solid dose manufacturing and offered training and consulting to customers along with equipment purchasing assistance.

25.     Federal planned, financed, and built a lab, run by Techceuticals ("Techceuticals Lab") for the purpose of bringing customers on-site to train on solid dose manufacturing processes, defects, and problems associated with such manufacturing.

4

26.     To procure the specialized equipment used in the Techceuticals Lab, Federal leveraged its longstanding relationships and reputation with various Original Equipment Manufacturers ("OEMs") and third-party vendors.

27.     Through Techceuticals and the Techceuticals Lab, Federal fostered and strengthened its relationships with various OEMs and third-party vendors.

28.     Federal's business, economic, and contractual relationships with the OEMs and other third-party vendors, fostered and strengthened through Techceuticals, put Federal in a unique position to sell the OEM's equipment and products and services of other third-party vendors, thereby giving Federal an advantage in the marketplace.

29.     Federal offers these services nationally and internationally.

30.     Tousey, as head of Techceuticals, LLC, was intimately involved in the creation of these confidential and proprietary training methods and technical know-how, as well as development and knowledge of Federal's client base and purchasing of equipment.

31.     With this base of expertise and trade secrets, Federal has uniquely positioned itself within the industry to both provide customers with the relevant pharmaceutical manufacturing equipment and educate them on how to use it. In fact, during this time, Federal became the world's foremost expert in training programs for solid dose tablets and capsules.

32.     Federal positioned itself by virtue of the economic value of its expertise and trade secrets and the lack of general knowledge about them.

33.     Federal took steps to protect its trade secrets by various actions including but not limited to confidentiality/non-disclosure agreements.

34.     The aforementioned *Purchasing Agreement* incorporates a Mutual Confidentiality Agreement dated June 1, 2012, between Federal and Dorado International, Inc., the "*Mutual Confidentiality Agreement,*" attached as Exhibit B).

35.     The *Mutual Confidentiality Agreement* defines Ohio as the proper venue for any legal action arising out of the agreement.

36.     The *Mutual Confidentiality Agreement* defines the term "Confidential Information."

37.     According to the *Mutual Confidentiality Agreement*, "Confidential Information" includes, in part, tangible and intangible information related to ideas, innovations, techniques, technical materials and conceptions, marketing plans, and business plans. *Id*. at ¶ E.4.

38.     The *Mutual Confidentiality Agreement* further prohibits a party who receives Confidential Information from using it for their own benefit or the benefit of a third party.

39.     This confidentiality provision in the *Mutual Confidentiality Agreement* extends for five (5) years beyond the date of expiration of the agreement. See Exhibit B.

40.     The *Purchasing Agreement* was amended twice.

41.     In 2014, the First Amendment to the *Purchasing Agreement* (hereinafter, the "*First Amendment*") modified the structure of Techceuticals, LLC, and made Tousey a direct employee of Federal. See Exhibit C.

42.     In that capacity, Tousey remained Technical Director and CEO of Techceuticals, LLC and continued to hold a fiduciary position with Federal as a high-ranking employee.

43.     Following the *First Amendment*, Tousey continued to operate as the head of the Techceuticals, LLC, branch of Federal.

44.     Federal took reasonable steps to protect its confidential and proprietary trade secrets via its Employee Handbook, which includes a provision addressing proprietary and confidential information. See Exhibit D.

45.     The Employee Handbook defines confidential information as "any information that is not generally known to the public or industry. Customer lists, customer files, personnel files, computer records, financial and marketing data, process descriptions, research plans, formulas, and trade secrets are examples of the Company's confidential information." *Id*. at 31.

46.     The Employee Handbook states that employees cannot "use or disclose any proprietary confidential information they obtain during employment" and that "this obligation remains even after an employee's employment relationship with the Company ends." *Id*.

47.     Tousey signed an acknowledgment to Federal's Employee Handbook on April 7, 2019.  See Exhibit E.

48.     On May 1, 2020, Michael Tousey and Federal entered into a *Second Amendment to the Purchase Agreement* (hereinafter, the "*Second Amendment*"*)*. See Exhibit F.

49.     The *Second Amendment* terminated the *Purchase Agreement* and the *First Amendment* and transferred all of Techceuticals' and its members' ownership interest to Federal. *Id*.

50.     The *Second Amendment* explicitly states that the terms of the *Mutual Confidentiality Agreement "*shall remain intact and in effect."  *Id*. at ¶ 3.

51.     Following the *Second Amendment*, Tousey's title was modified to "Founder and Technical Director" of Techceuticals, LLC. Despite this title change, he continued to operate as the head of the Techceuticals, LLC arm of Federal.

52.     In this capacity, Tousey headed nearly all of Federal's efforts in solid dose training, methodologies, and management of related equipment.

53.     While working with—and for—Federal, Tousey assisted in the development of various confidential and proprietary training programs, technical information, methods, strategies, consulting plans, and techniques.

54.     While working with—and for—Federal, Tousey assisted in the development of business and marketing plans and strategies.

55.     While working with—and for—Federal, Tousey assisted in the development of a base of contacts within the business community.

56.     While working with—and for—Federal, Tousey assumed a high-ranking position within the company and was trusted with extensive, executive and fiduciary responsibilities.

57.     While working with—and for—Federal, Tousey was trusted to make significant financial decisions regarding Federal assets, particularly as it related to the purchasing and loaning of large-scale pharmaceutical manufacturing equipment.

58.     In January of 2021, NantKwest approached Federal for guidance and training on manufacturing and packaging of solid dose pharmaceuticals, an area of expertise for Federal.

59.     Upon information and belief, at the time the discussions took place, NantKwest's knowledge and ability to perform solid dose manufacturing was extremely limited.

60.     On or about January 11, 2021, Techceuticals, LLC, as part of Federal, began discussions with NantKwest to provide guidance and consulting (reflected in the unsigned "*NantKwest Agreement,*" attached as Exhibit G).

61.     On January 27, 2021, Federal forwarded a draft version of the *NantKwest Agreement* to NantKwest that included an Ohio forum clause. See Exhibit H.

62.     The parties did not sign the *NantKwest Agreement*.

63.     Federal took reasonable measures to protect its confidential and proprietary trade secrets by way of a non-disclosure agreement.

64.     As part of the *NantKwest Agreement*, Federal entered into a mutual non-disclosure agreement with NantKwest's parent company, NantWorks (hereinafter, "*NantWorks Non-Disclosure Agreement*" attached as Exhibit I).

65.     The *NantWorks Non-Disclosure Agreement* includes a provision regarding confidentiality. *Id*. at ¶ 1.3.

66.     The *NantWorks Non-Disclosure Agreement* defines "confidential information" as, in part, commercial proposals, technical and financial information, know-how, data relevant to product and proposed products, employees, and information regarding business relationships, suppliers, and customers. *Id.*

67.     The *NantWorks Non-Disclosure Agreement* also includes a non-disclosure provision. *Id*. at ¶ 2.

68.     The non-disclosure provision bars the use and disclosure of any confidential information for purposes outside of the terms of the underlying contract for a period of seven (7) years after the date of the agreement. *Id*. at ¶ 4.

69.     Tousey began work pursuant to this *NantWorks Non-Disclosure Agreement*, actively billing on the matter.

70.     NantWorks only learned of Tousey and the services that he could provide by virtue of conversations with Federal.  Without this disclosure, NantWorks, NantWest and ImmunityBio would have never known about Tousey or his capabilities.

71.     At one point, while discussing the project with NantWorks on a call with Federal, NantWorks' Chairman, Patrick Soon-Shiong, inquired about hiring Tousey directly due to his knowledge and expertise. Federal informed NantWorks that Tousey was not available as he was an employee of Federal and had obligations to Federal.

72.     During the same time period, NantWorks secretly began discussions regarding employment of Tousey by Corporate Defendants, in an effort to poach Tousey and thus circumvent entering a contract with Federal.

73.     On March 21, 2021, Tousey discussed, via email, an offer he had received from Patrick Soon-Shiong (ImmunityBio's Founder and Executive Chairman) to move to Los Angeles to begin working for ImmunityBio, a company that recently merged with NantKwest under the umbrella of NantWorks. ImmunityBio specializes in immunotherapy.

74.     In this email, Tousey proposed how he would open a new lab in Los Angeles should he get the job. Ostensibly, this lab would perform the same function as a similar lab Tousey ran as part of his employment with Federal.

75.     On or about April 14, 2021, Tousey began substantive email negotiations with ImmunityBio regarding salary and benefits.

76.     On or about May 11, 2021, Tousey left his employment with Federal and began working for ImmunityBio. Upon information and belief, Tousey has performed the same tasks with ImmunityBio as he did with Federal and that Federal would have performed for ImmunityBio.

77.     In leaving, Tousey took years of confidential and proprietary information and trade secrets with him. For example, he took information about the entirety of Federal's training programs, training methodologies, technical know-how, and machinery management knowledge.

78.     Further, Tousey took with him knowledge of Federal's base of contacts and clients industrywide, including contact information for numerous OEMs, customers, and third-party vendors.

79.     Tousey has used that information by providing Corporate Defendants with an entire base of confidential and proprietary technical know-how and client contacts at the expense of Federal.

80.     With his departure and hiring, ImmunityBio (and by extension, NantKwest and NantWorks) stole the entirety of Federal's business as it relates to solid dose pharmaceutical consulting and strategy, taking confidential and proprietary knowledge, technical expertise, and knowledge of Federal's client base and contacts.

81.     Furthermore, while employed with Federal, Tousey received a loan in the amount of $20,000.00 on or about April of 2016.

82.     Corporate Defendants knew that Tousey possessed and was using Federal's confidential, proprietary, and/or trade secret information on their behalf and without Federal's consent.

83.     Corporate Defendants used, or permitted Tousey to use on their behalf, Federal's confidential, proprietary, or trade secret information thereby intentionally diverting business from Federal and diminishing Federal's business, economic, and/or contractual relationships between Federal and approximately twenty OEMs and/or third-party vendors.

84.

85.     Tousey never repaid this loan, even after being questioned about it following his announced departure.

11

86.     Despite never repaying the loan, Tousey reaffirmed its existence in writing on several occasions.

87.     On or about May 8, 2021, and possibly earlier, Tousey began deleting incriminating emails from his Federal email account.  He did so without Federal's authorization to do so.

88.     Despite Tousey's attempts to cover his tracks, several emails were recovered that detailed a history of self-dealing at the expense of Federal.

89.     These emails indicate that, at various instances during his employment over the course of years, Tousey directed equipment suppliers via email to pay him sales commissions personally, instead of Federal. In numerous instances, Tousey directed commissions to be made to him personally and sent to his individual home address, often reiterating to the suppliers repeatedly that he, and not Federal, was to be paid personally. The dates of these emails are as follows: February 1, 2019; March 25, 2019; April 10, 2019; June 2, 2019; March 24, 2020; October 27, 2020; November 17, 2020; November 30, 2020; December 9, 2020; January 21, 2021; February 10, 2021; February 15, 2021; February 17, 2021; April 13, 2021; and April 15, 2021.

90.     Upon information and belief, on or about the following dates, Tousey engaged in email discussions to purchase directly, or provide leads for the purchase of, equipment for customers and competitors in exchange for direct commissions at the expense of Federal and potentially at the benefit of Defendants: February 16, 2021; March 19, 2021; March 25, 2021.

91.     Federal had previously made it clear that all commissions were to go to Federal itself and not to personal individuals.

92.     Upon departing Federal, Tousey contacted clients and suppliers and told them that Techceuticals was "closing up shop," a fact that was not accurate.

93.     Upon departing Federal, Tousey marked several training classes as full when they were not, costing Federal several thousand dollars in potential fees.

94.     Tousey's last day with Federal was June 11, 2021.

95.     Federal requested that Tousey return passwords, contact information, and other Federal property before his departure.

96.     Federal has conducted a forensic analysis of Tousey's computer and email accounts. This analysis reveals multiple instances in which Tousey forwarded Federal's confidential and proprietary information to himself.

97.     While still employed with Federal, on April 14, 2021, Tousey forwarded an email to his personal email account detailing Federal's confidential and proprietary information.

98.     While still employed with Federal, on May 13, 2021, Tousey forwarded multiple emails to his personal email account detailing Federal's confidential and proprietary information.

99.     While still employed with Federal, on May 13, 2021, Tousey forwarded multiple emails to his personal email account regarding equipment to be purchased for the other Defendants. Upon information and belief, this equipment will be used by the Defendants for setting up a rival operation.

100.    While still employed with Federal, on May 13, 2021, Tousey forwarded an additional email to his personal email account detailing Federal's confidential and proprietary information.

101.    While still employed with Federal, on May 14, 2021, Tousey forwarded an email to his personal email account regarding equipment to be purchased for the other Defendants. Upon information and belief, this equipment will be used by the Defendants for setting up a rival operation, and/or use of Federal's confidential and proprietary information.

102.     While still employed with Federal, on May 14, 2021, Tousey forwarded an additional email to his personal email account detailing Federal's confidential and proprietary information.

103.     While still employed with Federal, on May 17, 2021, Tousey forwarded multiple emails to his personal email account detailing Federal's confidential and proprietary information.

104.     While still employed with Federal, on May 21, 2021, Tousey forwarded multiple emails to his personal email account detailing equipment to be purchased for the other Defendants. Upon information and belief, this equipment will be used by the Defendants for setting up a rival operation and/or will otherwise be used in a manner like Corporate Defendants approached Federal to set up for them.

105.     While still employed with Federal, on May 24, 2021, Tousey forwarded multiple emails to his personal email account detailing Federal's confidential and proprietary information.

106.     While still employed with Federal, on May 24, 2021, Tousey forwarded multiple emails to his personal email account regarding equipment to be purchased for the other Defendants. Upon information and belief, this equipment will be used by the Defendants for setting up a rival operation and/or will otherwise be used in a manner like Corporate Defendants approached Federal to set up for them.

107.     While still employed with Federal, on May 24, 2021, Tousey had discussions with a current Federal client regarding continuing to work with him after his departure.

108.     While still employed with Federal, on May 25, 2021, Tousey forwarded multiple emails to his personal email account regarding equipment to be purchased for the other Defendants. Upon information and belief, this equipment will be used by the Defendants for setting up a rival

14

operation and/or will otherwise be used in a manner like Corporate Defendants approached Federal to set up for them.

109.    While still employed with Federal, on May 26, 2021, Tousey forwarded multiple emails to his personal email account detailing Federal's confidential and proprietary information.

110.    While still employed with Federal, on May 27, 2021, Tousey forwarded multiple emails to his personal email account detailing Federal's confidential and proprietary information.

111.    While still employed with Federal, on June 8, 2021, Tousey forwarded an email to his personal email account detailing Federal's confidential and proprietary information.

112.    The forensic analysis shows that while still employed with Federal, Tousey participated in multiple video conference meetings with the other Defendants regarding equipment and tableting.

113.    The forensic analysis also shows that, on multiple occasions after announcing his departure from Federal, Tousey accessed numerous Federal files on external hard drives.

114.    These files contained Federal's confidential and proprietary information.

115.    Tousey did not return these hard drives, despite being asked to do so.

<u>**COUNT I:**</u>
<u>**MISAPPROPRIATION AND/OR USE OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT**</u>
<u>**(Against Defendant Tousey)**</u>

116.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 115 as if fully rewritten herein.

117.    The confidential and proprietary information to which Tousey has been exposed and has access, as described in this Complaint, constitute trade secrets within the meaning of 18 U.S. Code §1839(3).

118.    For example, the Corporate Defendants have received Federal's financial, business, scientific, technical and engineering information, including: tangible and intangible information related to training methods; training documents; technical materials; arrangement and presentation of those materials; customer lists, representative network, and client contacts; Federal's inventory sources, costs, pricing, potential profit margins, and potential inventory; marketing and advertising strategies and tactics; and, vendor information including pricing, negotiated commissions, and inventory availability.

119.    Before leaving Federal, Tousey forwarded Federal's confidential and proprietary information to his personal email account and accessed files containing Federal's confidential and proprietary information on hard drives that he did not return to Federal.

120.    Federal uses this confidential, proprietary and trade secret information as part of its national and international business.

121.     The above information derives independent economic value by virtue of it not being generally known or ascertainable.

122.    Federal has taken reasonable steps to protect its confidential, proprietary and trade secret information.

123.    Upon information and belief, Tousey, since leaving Federal and continuing to the present and without justification or privilege to do so, misappropriated and/or used Federal's trade secrets related to products or services by among other things, using and/or disclosing Federal's confidential, proprietary, and trade secret information to further his business interests and has provided this information to the Corporate Defendants.

124.    Tousey's misappropriation was willful.

16

125.    Based on the nature of Tousey's employment with the Corporate Defendants, Tousey has used the confidential and proprietary trade secrets he learned while at Federal.

126.    Tousey has failed to return Federal's confidential, proprietary, and trade secret information.

127.    As a direct and proximate result of this trade secret misappropriation and use, Federal lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

128.    Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

129.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

**COUNT II:**
**MISAPPROPRIATION AND/OR USE OF TRADE SECRETS IN VIOLATION OF**
**THE DEFEND TRADE SECRETS ACT**
**(Against Corporate Defendants)**

130.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 129 as if fully rewritten herein.

131.    The confidential and proprietary information Tousey exposed to the Corporate Defendants as described in this Complaint, constitute trade secrets within the meaning of 18 U.S. Code §1839(3).

132.    For example, the Corporate Defendants have received Federal's financial, business, scientific, technical and engineering information, including: tangible and intangible information related to training methods; training documents; technical materials; arrangement and presentation of those materials; customer lists, representative network, and client contacts; Federal's inventory sources, costs, pricing, potential profit margins, and potential inventory; marketing and advertising strategies and tactics; a key Federal employee (Tousey); and, vendor information including pricing, negotiated commissions, and inventory availability.

133.    Before leaving Federal, Tousey forwarded Federal's confidential and proprietary information to his personal email account and accessed files containing Federal's confidential and proprietary information on hard drives that he did not return to Federal.

134.    Federal uses this confidential, proprietary and trade secret information as part of its national and international business.

135.    Rather than continuing a working relationship with Federal, Corporate Defendants poached Federal's key employee (Tousey) to acquire Federal's confidential and proprietary information and cut Federal out of the picture entirely.

18

136. The Corporate Defendants now possess, misappropriated and used this information by virtue of Tousey's employment.

137. The above information derives independent economic value by virtue of it not being generally known or ascertainable.

138. Federal has taken reasonable steps to protect its confidential, proprietary and trade secret information.

139. Upon information and belief, Corporate Defendants, without justification or privilege to do so, misappropriated and/or used Federal's trade secrets related to products or services by among other things, using and disclosing Federal's confidential, proprietary, and trade secret information to further their business interests.

140. The Corporate Defendants have misappropriated and used this confidential and proprietary trade secret information for their own benefit in furtherance of their business interests and to directly compete with Federal.

141. As a direct and proximate result of this trade secret misappropriation and use, Federal lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

142. Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

143. For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## COUNT III:
## BREACH OF CONTRACT
## (Against Defendant Tousey)

144.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 145 as if fully rewritten herein.

145.    As a material condition of his employment, Tousey signed the *Second Amendment* with Federal.

146.    As part of the *Second Amendment,* Tousey agreed to abide by the provisions of the *Mutual Confidentiality Agreement.*

147.    Tousey breached the *Second Amendment* and the *Mutual Confidentiality Agreement* by using Federal's confidential and proprietary information in his day-to-day work with Corporate Defendants. For example, Tousey took Federal's confidential and proprietary information before leaving Federal. This confidential and propriety information is now in the hands of the Defendants.

148.    Federal has performed all of its obligations under the *Second Amendment* and the *Mutual Confidentiality Agreement*, and all conditions precedent to the enforcement of these agreements have been satisfied, waived, or abandoned.

149.    Tousey, without justification or privilege to do so, has misappropriated Federal's trade secrets in violation of *Second Amendment* and the *Mutual Confidentiality Agreement* by, among other things, using and disclosing Federal's confidential, proprietary, and trade secret information to further his business interests and has provided that information to the other Defendants and to others. Tousey took Federal's confidential and proprietary information before leaving his employment. Based on the nature of Tousey's employment with Corporate Defendants, Tousey has used this confidential and proprietary trade secret information to benefit both personally and the other Defendants professionally, likely copying the exact same business and business model employed by Federal.

150.    As a direct and proximate result of this breach of the *Second Amendment* and the *Mutual Confidentiality Agreement*, Federal has lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

151.    Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

152.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## COUNT IV:
## MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER OHIO LAW
### (Against Defendant Tousey)

153.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 152 as if fully rewritten herein.

154.    The confidential and proprietary information to which Tousey has been exposed and has access, as described in this Complaint, constitute trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

155.    For example, Tousey received tangible and intangible information related to training methods; training documents; technical materials; arrangement and presentation of those materials; customer lists, representative network, and client contacts; Federal's inventory sources, costs, pricing, potential profit margins, and potential inventory; marketing and advertising strategies and tactics; and, vendor information including pricing, negotiated commissions, and inventory availability.

156.     Before leaving Federal, Tousey forwarded Federal's confidential and proprietary information to his personal email account and accessed files containing Federal's confidential and proprietary information on hard drives that he did not return to Federal.

157.     Federal has taken reasonable steps to protect its confidential, proprietary and trade secret information.

158.     Federal's confidential, proprietary and trade secret information is not generally known or readily ascertainable.

159.     Upon information and belief, Tousey, since leaving Federal and continuing to the present and without justification or privilege to do so, misappropriated and used Federal's trade secrets related to products or services by among other things, using and disclosing Federal's confidential, proprietary, and trade secret information to further his business interests and has provided this information to the Corporate Defendants.

160.     Tousey's misappropriation was willful.

161.     Based on the nature of Tousey's employment with the Corporate Defendants, Tousey has used the confidential, trade secret information he learned while at Federal.

162.     Tousey has failed to return Federal's confidential, proprietary, and trade secret information.

163.     As a direct and proximate result of this trade secret misappropriation and use, Federal lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

164.     Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

Case: 1:21-cv-01422-CEF  Doc #: 220  Filed:  12/20/23  24 of 36.  PageID #: 6004

165.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

**COUNT V:**
**BREACH OF FIDUCIARY DUTY**
**(Against Defendant Tousey)**

166.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 165 as if fully rewritten herein.

167.    By virtue of his longstanding employment and high-ranking position within Federal, as well as his intimate knowledge of proprietary and confidential trade secrets, work under the Techceuticals name, and control over significant Federal assets, Tousey owes a fiduciary duty to Federal.

168.    As a fiduciary, Tousey owes a heightened duty to Federal via his position.

169.    By using Federal's confidential and proprietary information, Tousey violated this duty.

24

170.    Tousey violated this duty by diverting Federal sales to the Corporate Defendants.

171.    Tousey violated this duty by directing equipment suppliers to pay him sales commissions personally.

172.    Tousey violated this duty by arranging to purchase, or provide leads for the purchase, of equipment for customers and competitors in exchange for direct commissions.

173.    Tousey violated this duty by stealing Federal's confidential and proprietary information and providing it to the other Defendants, and others.

174.    As a result, Federal lost its competitive position, lost its goodwill, lost sales, lost commissions, and lost its investment in time and energy in generating its confidential information.

175.    Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

176.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## COUNT VI:
## BREACH OF A LOAN
## (Against Defendant Tousey)

177.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 176 as if fully rewritten herein.

178.    Tousey received a $20,000.00 loan from Federal.

179.    Tousey affirmed this debt to Federal on multiple occasions.

180.    On or about June 24, 2021, Federal requested Tousey to repay the loan.

181.    Tousey refused to do so.

182.    To date, Tousey has not repaid the $20,000.00 loan.

183.    Federal has performed all obligations related to the loan.

184.    This intentional failure to repay the loan constitutes a breach of contract.

185.    As a direct and proximate result of Tousey's breach, Federal has suffered financial harm.

186.    Federal is entitled to repayment of the $20,000 loan.

## COUNT VII:
## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS
## (Against Defendant Tousey)

187.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 186 as if fully rewritten herein.

188.    Tousey is aware of Federal's economic relationships with its clients.

189.    Without justification or privilege, Tousey willfully and intentionally directed equipment suppliers to pay him sales commissions personally and arranged to purchase, or provide

26

leads for the purchase of, equipment for customers and competitors in exchange for direct commissions.

190.    Further, Tousey is aware of Federal's relationship with clients in the marketplace.

191.    Without justification or privilege, Tousey willfully and intentionally interfered with these relationships by diverting customers and potential sales from Federal to the Corporate Defendants, himself, or others.

192.    Further, Tousey is aware of the contracts that exist between Federal and its clients.

193.    Without justification, Tousey willfully and intentionally interfered with these contracts in an unjustified and improper manner by diverting customers to the Corporate Defendants or others, directing equipment suppliers to pay him sales commissions personally and arranging to purchase, or provide leads for the purchase of, equipment for customers and competitors in exchange for direct commissions.

194.    As a direct and proximate result of Tousey's interference, Federal has suffered irreparable harm, including the loss of revenue, the loss of its competitive position, the loss of business good will, the loss of its confidential information, and the loss of investment in time and energy in generating the foregoing.

195.    Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

196.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## COUNT VIII:
## MISAPPROPRIATION AND/OR USE OF TRADE SECRETS UNDER OHIO LAW
### (Against Corporate Defendants)

197.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 196 as if fully rewritten herein.

198.    The confidential and proprietary information which Tousey exposed to Corporate Defendants, as described in this Complaint, constitute trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

199.    For example, the Corporate Defendants have received Federal's financial, business, scientific, technical and engineering information, including: tangible and intangible information related to training methods; training documents; technical materials; arrangement and presentation of those materials; customer lists, representative network, and client contacts; Federal's inventory sources, costs, pricing, potential profit margins, and potential inventory; marketing and advertising strategies and tactics; and, vendor information including pricing, negotiated commissions, and inventory availability.

200.    Before leaving Federal, Tousey forwarded Federal's confidential and proprietary information to his personal email account and accessed files containing Federal's confidential and proprietary information on hard drives that he did not return to Federal.

201.    Federal uses this confidential, proprietary and trade secret information as part of its national and international business.

202.    The Corporate Defendants now possess this information by virtue of Tousey's employment.

203.    The above information derives independent economic value by virtue of it not being generally known or ascertainable.

204.    Federal has taken reasonable steps to protect its confidential, proprietary and trade secret information.

205.    Upon information and belief, Corporate Defendants, without justification or privilege to do so, misappropriated and used Federal's trade secrets related to products or services by among other things, using and disclosing Federal's confidential, proprietary, and trade secret information to further their business interests.

206.    The Corporate Defendants have used this confidential and proprietary trade secret information for their own benefit in furtherance of their business interests and to directly compete with Federal.

207.    The Corporate Defendant's misappropriation was willful.

208.    As a direct and proximate result of this trade secret misappropriation and use, Federal lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information.

209.    Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

210.    For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## COUNT IX:
## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS
### (Against Corporate Defendants)

211.    Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 210 as if fully rewritten herein.

212.    Corporate Defendants were and are aware of Federal's business relationship withTousey.

213.    Corporate Defendants were and are aware of Tousey's contractual obligations to Federal.

214.    Without justification or privilege, Corporate Defendants wrongfully and intentionally interfered with this business and contractual relationship by entering into an employment relationship with Tousey.

215.    Corporate Defendants were and are aware of Federal's economic relationships with approximately twenty OEMs and other third-parties.

216.    Without justification or privilege, Corporate Defendants willfully and intentionally interfered with Federal's economic or business relationships by: (a) diverting sales from and purchases from Federal; (b) taking, using or disclosing Federal's confidential or proprietary information for their owns purposes; (c) removing third party confidential or proprietary information from Federal; or (d) engaging in communications designed to interfere with Federal's relationships.

217.    Further, Corporate Defendants are and were aware of Federal's relationships with OEMs and these third-parties.

218.    Further, Corporate Defendants, by virtue of their employment of Tousey, are aware of certain contracts that exist between Federal and its OEMs and other third-parties.

219.    Without justification, Corporate Defendants willfully and intentionally interfered with these contracts in an unjustified and improper manner by taking, using, maintaining and disclosing confidential OEM and third-party information,.

220.

221.    Corporate Defendants have willfully and intentionally interfered with Federal's economic and contractual relationship in an unjustified and improper manner.

222.    As a direct and proximate result of the Corporate Defendants' interference, Federal has suffered irreparable harm, including the loss of revenue, the loss of its competitive position,

the loss of business good will, the loss of its confidential information, and the loss of investment in time and energy in generating the foregoing.

223. Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

224. For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

### COUNT X:
### BREACH OF CONTRACT
### (Against Corporate Defendants)

225. Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 224 as if fully rewritten herein.

226. As a material condition of their agreement with Federal, Corporate Defendants entered into the *NantWorks Non-Disclosure Agreement.*

32

227.    As part of the *NantWorks Non-Disclosure Agreement,* Corporate Defendants agreed to abide by the confidentiality and non-disclosure provisions within the *Agreement*.

228.    Corporate Defendants breached the *NantWorks Non-Disclosure Agreement* by employing Tousey.  In doing so, they breached the confidentiality and non-disclosure provisions by utilizing Federal's trade secrets for their own use. Prior to his departure, Tousey forwarded Federal's confidential and proprietary information to his personal email and accessed Federal's confidential and proprietary information on hard drives that he did not return. Corporate Defendants now possess this information via their employment of Tousey.

229.    Federal has performed all of its obligations under the *NantWorks Non-Disclosure Agreement*, and all conditions precedent to the enforcement of these agreements have been satisfied, waived, or abandoned.

230.    Corporate Defendants, without justification or privilege to do so, misappropriated Federal's trade secrets in violation of *NantWorks Non-Disclosure Agreement* by, among other things, poaching a key Federal employee (Tousey),  using and disclosing Federal's confidential, proprietary, and trade secret information to further their business interests. Based on the nature of Tousey's employment, Corporate Defendants now possess the confidential and proprietary information Tousey took with him before leaving Federal.

231.    As a direct and proximate result of this breach of the *NantWorks Non-Disclosure Agreement*, Federal lost its competitive position, lost its goodwill, lost sales, and lost its investment in time and energy in generating its confidential information. Federal faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

232.     Federal is entitled to damages in a monetary amount to be proven at trial, but which in no event is less than seventy-five thousand dollars ($75,000) for that harm which is compensable.

233.     For damages which are irreparable, Federal is entitled to preliminary and permanent injunctive relief, enjoining and restraining Tousey and any other person or entity acting in aid or concert, or in participation with him as follows:

(a) requiring Tousey and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of his contractual violations;

(b) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of Federal's trade secret or confidential information;

(c) prohibiting Tousey and any other person or entity acting in aid or concert, or in participation with him from interfering with Federal's business and/or contracts; and

(d) requiring Tousey to immediately return all of Federal's property and information.

## REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

234.     Federal incorporates herein by reference all allegations set forth in Paragraphs 1 through 233 as if fully rewritten herein.

235.     Ohio Civil Rule 65 allows this Honorable Court to issue injunctive relief under the circumstances in this Amended Complaint.

236.     In this case, Federal submits the specific facts referenced in this Amended Complaint justify injunctive relief.

34

237.     Tousey's employment with Corporate Defendants directly violates his contractual obligations to Federal and jeopardizes Federal's confidential information and trade secrets and its ability to fairly compete.

238.     As set forth in the *Mutual Confidentiality Agreement*, the parties acknowledged that "it is impossible to measure fully, in money, the injury that will be caused in the event of a breach or threatened breach of any of the provisions of this Agreement, and each party waives the claim or defense that the other party has an adequate remedy at law. Each party shall be entitled to injunctive relief to enforce the provisions of this Agreement, without prejudice to any other remedy that such party may have at law or in equity."

239.     As set forth in the *NantWorks Non-Disclosure Agreement*, the parties agree that "in addition to any other remedy to which the Disclosing Party may be entitled by law or equity, Disclosing Party shall be entitled to seek an injunction to prevent a breach of this Agreement."

For these reasons and those more fully described above in this Amended Complaint, Federal seeks a temporary restraining order, preliminary injunction, and permanent injunction to prevent this irreparable harm.

## DAMAGES

WHEREFORE, Federal respectfully requests that this Court enter judgment in its favor and against Tousey, and Corporate Defendants, as follows:

A.  A temporary restraining order, preliminary injunction and permanent injunction prohibiting all Defendants and any other person or entity acting in aid or concert, or in participation with them from using or disclosing any of Federal's confidential information or trade secrets;

B.  A temporary restraining order, preliminary injunction and permanent injunction prohibiting Corporate Defendants from interfering with Federal's agreements involving Tousey;

C. A temporary restraining order, preliminary injunction and permanent injunction prohibiting Tousey from engaging in any other conduct that would otherwise violate his agreements with Federal;

D. A temporary restraining order, preliminary injunction and permanent injunction prohibiting all Defendants from contacting Federal's clients;

E. Requiring Defendants to immediately return all of Federal's property and information;

F. Awarding Federal compensatory damages in an amount to be proven at trial, but in no event less than $75,000.00;

G. Awarding Federal punitive damages in an amount to be proven at trial;

H. Awarding Federal its reasonable attorneys' fees and costs; and

Awarding such other relief in Federal's favor that the Court deems just and equitable under the circumstances described herein.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

_____
Stephen S. Zashin (0064557)
ssz@zrlaw.com
Ami J. Patel (0078201)
ajp@zrlaw.com
Corey N. Thrush (0085985)
ct@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Tel.: (216) 696-4441
Fax: (216) 696-1618
*Attorneys for Plaintiff*