UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FEDERAL MACHINERY AND EQUIPMENT COMPANY D.B.A. FEDERAL EQUIPMENT COMPANY, <br><br>        Plaintiff, <br><br> v. <br><br> MICHAEL TOUSEY, NANTWORKS, LLC, NANTKWEST, INC., IMMUNITYBIO, INC., and JOHN DOE COMPANIES 1-5, <br><br>        Defendants. | Case No. 1:21-cv-01422-CEF <br><br> *Judge: Charles Esque Fleming* <br><br> *Magistrate Judge: Jonathan D. Greenberg* <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CORPORATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................1

II.    SUMMARY OF ARGUMENT PRESENTED ...............................................1

III.   FACTUAL BACKGROUND.........................................................................2

     A.    This Litigation Has Progressed to an Advanced Stage With Fact Discovery Complete Except for Third Party Discovery Related to Federal's New Tortious Interference Claims ...............................................................2

     B.    The SAC Asserts Four Claims Against the Corporate Defendants ........................3

           1.    Trade Secret Misappropriation (Counts II & VIII)......................................3

           2.    Tortious Interference with Economic Relations (Count IX).......................3

           3.    Breach of Contract (Count X)....................................................................5

IV.   LEGAL STANDARD....................................................................................5

V.    ARGUMENT ...............................................................................................6

     A.    The SAC Fails to State a Claim for Tortious Interference (Count IX)...................6

           1.    The SAC Fails to State a Plausible Claim for Interfering With Federal's Relationship With "OEMs and Other Third-Parties" ................7

           2.    The SAC Fails to State a Plausible Claim for Interference With Federal's Relationship With Tousey.....................................................9

     B.    The SAC Fails to State a Claim for Breach of Contract (Count X).....................12

           1.    Federal's Claim for Breach of Contract is Preempted by the OUTSA ....................................................................................13

           2.    Federal Cannot Establish That it Performed Its Obligations Under the NDA as Required to State a Plausible Claim......................................16

     C.    Federal's Claims for Tortious Interference and Breach of Contract Should Be Dismissed Without Leave to Amend....................................................18

           1.    Federal Cannot State a Plausible Claim for Breach of Contract in This District ........................................................................18

            2.    Federal Cannot Amend Its Tortious Interference Claim Without Unduly Prejudicing Corporate Defendants.................................................18

VI.   CONCLUSION...........................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases (State)**

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Coun.*
73 Ohio St. 3d 1 (1995)..................................................................................2, 6, 8, 11

*All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*
2006 WL 3095701 (Case No. 87569, Ohio Ct. App., Nov. 2, 2006) ....................................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)........................................................................................ *passim*

*AT&T Corp. v. Overdrive, Inc.*
No. 1:05CV1904, 2007 U.S. Dist. LEXIS 1921 (N.D. Ohio Jan. 10, 2007) ...........................7

*Bassett v. National Collegiate Athletic Ass'n*
528 F.3d 426 (6th Cir. 2008) ......................................................................................12, 16

*BCG Masonic Cleveland, LLC v. Live Nation Entm't, Inc.*
570 F. Supp. 3d 552 (N.D. Ohio 2021)......................................................................6, 7, 9, 10

*Bickerstaff v. Lucarelli*
830 F.3d 388 (6th Cir. 2016) ...................................................................................5

*Cates v. Crystal Clear Tech., LLC*
874 F.3d 530 (6th Cir. 2017) .............................................................................5, 6, 7, 17

*Center for Bio-Ethical Reform, Inc. v. Napolitano*
648 F.3d 365 (6th Cir. 2011) ...........................................................................6, 8, 9, 11

*Dryden v. Cincinnati Bell Tel. Co.*
135 Ohio App. 3d 394 (Ohio Ct. App. 1999) .........................................................11

*Electronic Merchant Sys. LLC v. Gaal*
58 F.4th 877 (6th Cir. 2023) .......................................................................................17

*Fred Siegel Co., L.P.A. v. Arter & Hadden*
707 N.E.2d 853 (Ohio 1999)........................................................................... *passim*

*Ginn v. Stonecreek Dental Care*
30 N.E.3d 1034 (Ohio Ct. App. 2015)..........................................................7, 8, 10, 11

*Godfredson v. Hess & Clark, Inc.*
173 F.3d 365 (6th Cir. 1999) ....................................................................................11

*Golf Vill. North, LLC v. City of Powell*
    14F.4th 611, 617 (6th Cir. 2021) ......................................................................17

*Hall v. Sweet*
    666 F. App'x 469 (6th Cir. 2016) ...................................................................6, 16

*Hanneman Family Funeral Home and Crematorium v. Orians*
    2023 WL 6626674 (Case No. 22-573, Ohio Oct. 12, 2023)............................13, 14

*Humphreys v. Bellaire Corp.*
    966 F.2d 1037 (6th Cir. 1992) ........................................................................12

*Kenyon v. Union Home Mortgage Corp.*
    581 F. Supp. 3d 951 (N.D. Ohio 2022)..............................................................11

*Metron Nutraceuticals, LLC v. Cook*
    2023 WL 4565987 (Case No. 20:1803, N.D. Ohio, Jul. 18, 2023) .....................13, 14, 15, 16

*Milacron LLC v. Advanced Fluids, Inc.*
    No. 1:13-cv-364, 2013 U.S. Dist. LEXIS 150922 (S.D. Ohio Oct. 21, 2013) ..........................8

*Miles v. Deutsche Bank National Trust Co.*
    236 Cal. App. 4th 394 (2015) ........................................................................2, 17

*Mitchell v. Mid-Ohio Emergency Services, L.L.C.*
    2004-Ohio-5264 (Ohio. Ct. App. 2004)..............................................................12

*MTD Products Inc. v. Am. Honda Motor Co., Inc.*
    627 F. Supp. 3d 867 (N.D. Ohio 2022)................................................................9

*Nor. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*
    69 F.3d 1034 (9th Cir. 1995) ........................................................................16

*Office Depot, Inc. v. Impact Office Products, LLC*
    No. 9-cv-2791, 2011 WL 4833117 (N.D. Ohio Oct. 12, 2011)........................14, 15

*Pittman v. Experian Information Solutions, Inc.*
    901 F.3d 619 (6th Cir. 2018) ........................................................................18, 19

*Race Winning Brands, Inc. v. Crawford*
    601 F. Supp. 3d 279 (N.D. Ohio 2022)................................................................16, 18

*Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*
    936 N.E.2d 122 (Ohio Ct. App. 2010)................................................................13

*Rubber City Machinery Corp. v. Pergl*
    No. 5:22-cv-01167, 2023 WL 8529102 (N.D. Ohio, Dec. 7, 2023) ....................1, 12

*Sal's Heating and Cooling Inc. v. BERS Acquisition Co., LLC*
   192 N.E.3d 537 (Ohio Ct. App. 2022) ................................................................13

*Smith v. Aegon Companies Pension Plan*
   769 F.3d 922, 933-934 (6th Cir. 2014) ..............................................................18

*Stolle Machinery Co., LLC v. RAM Precision Industries*
   605 F. App'x 473 (6th Cir. 2015) ....................................................2, 13, 14, 15

*Tomaydo-Tomahhdo L.L.C. v. Vozary*
   82 N.E.3d 1180 (Ohio Ct. App. 2017) ..........................................................14, 15

*Wells Fargo Bank, N.A. v. Favino*
   No. 1:10 CV 571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ......................17

*Wilkey v. Hull*
   366 F. App'x 634 (6th Cir. 2010) ..................................................7, 8, 10, 11

*Wilson v. 5 Choices, LLC*
   776 F. App'x 320, 325-326 (6th Cir. 2019) ........................................................18

**Statutes**

Ohio Uniform Trade Secrets Act
   § 1333.61 ...........................................................................................................15
   § 1333.67 ..................................................................................................2, 13, 15
   § 1333.69 ...........................................................................................................15

**Court Rules**

Federal Rules of Civil Procedure
   Rule 12 ..............................................................................................................16
   Rule 12(b)(6) ...............................................................................................1, 5, 18

## I.     STATEMENT OF ISSUES TO BE DECIDED

Whether the Second Amended Complaint ("SAC," ECF No. 220) alleges plausible

claims for tortious interference and breach of contract against Defendants NantWorks, LLC,

NantKwest, Inc., and ImmunityBio, Inc. (collectively "Corporate Defendants")?

## II.    SUMMARY OF ARGUMENT PRESENTED

Plaintiff Federal Machinery & Equipment Co.'s ("Federal") SAC fails to state plausible

claims for tortious interference and breach of contract. Accordingly, Corporate Defendants'

motion to dismiss should be granted under Fed. R. Civ. P. 12(b)(6) without leave to amend

because further amendment would be futile or unduly prejudicial.

The SAC makes conclusory allegations that Corporate Defendants tortiously interfered

with their: (1) "business and contractual relationship" with Tousey; and (2) business

relationships with "approximately twenty OEMs and other third-parties."  First, the SAC fails to

state a plausible claim for tortious interference with contract because it does not even allege that

Corporate Defendants caused Tousey to breach any contract.  The few concrete facts alleged in

the SAC confirm that Tousey was an at-will employee of Federal before joining ImmunityBio.

(SAC ¶¶ 14, 41-42, 71, 76.)  As a matter of law, it is not tortious interference to interfere with an

at-will employment relationship.  *See, e.g., Rubber City Machinery Corp. v. Pergl*, No. 5:22-cv-

01167, 2023 WL 8529102 at *4 (N.D. Ohio, Dec. 7, 2023).  Consequently, the SAC fails to state

a plausible claim for tortious interference with the Federal-Tousey relationship.

The allegation that Corporate Defendants tortiously interfered with Federal's

relationships with unspecified "OEMs and other third-parties" consists entirely of threadbare

legal conclusions that are disregarded on a motion to dismiss.  The SAC not only fails to describe

the nature of Federal's relationships with these entities, it fails to allege that Corporate

Defendants caused the "OEMs and other third-parties" to breach their contracts with Federal, or

not to enter into or continue a business relation with Federal, as required to state a valid claim.  *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Coun.*, 73 Ohio St. 3d 1, 14 (1995).

The SAC similarly fails to state a plausible claim for breach of the Mutual Non-Disclosure Agreement ("NDA") between Federal and the Corporate Defendants.  Federal's breach of contract claim is preempted by § 1333.67 of the Ohio Uniform Trade Secrets Act ("OUTSA") because it is based on the identical core set of facts that Federal relies upon for its trade secret misappropriation claim.  *See Stolle Machinery Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 484 (6th Cir. 2015).  Specifically, Federal alleges that Corporate Defendants' employment of Tousey misappropriated its trade secrets and that the same act also breached the NDA.  (SAC ¶¶ 202, 228, 230.)  Moreover, the NDA includes a mandatory forum selection clause that requires litigation in Los Angeles, California.  (ECF No. 34-9, § 7.)[1]  By filing suit in this District, Federal breached the forum selection clause and, therefore, cannot establish that it performed its obligations under the NDA as required to state a claim for breach of contract.  *Miles v. Deutsche Bank National Trust Co.*, 236 Cal. App. 4th 394, 402 (2015).[2]

## III.    FACTUAL BACKGROUND

### A.    This Litigation Has Progressed to an Advanced Stage With Fact Discovery Complete Except for Third Party Discovery Related to Federal's New Tortious Interference Claims

Corporate Defendants agree with Federal that this litigation is "overdue to be resolved." (ECF No. 213 at 3.)  Federal started this case by filing a Verified Complaint in Cuyahoga

---

[1] This motion references the exhibits attached to the First Amended Complaint ("FAC," ECF No. 34).  The filed version of the SAC (ECF No. 220) lacks the referenced exhibits, although it references the same documents.

[2] The NDA is governed by California law.

County, Ohio on July 20, 2021 that was removed to this Court shortly thereafter.  (ECF No 1.)
Fact discovery closed on November 17, 2023, except for depositions of certain Federal witnesses
that were rescheduled due to illness.  (ECF No. 173.)

More than two weeks later on December 5, 2023, Federal filed a motion to amend the
FAC to add new tortious interference claims.  (ECF Nos. 192, 194.)  The Court granted Federal's
motion to amend on December 20, 2023 and reopened discovery to allow third-party discovery
on the new claims.  (ECF No. 209, at 10.)

Trial is set to begin on July 9, 2024.  (ECF Nos. 173, 182, 218.)

### B.    The SAC Asserts Four Claims Against the Corporate Defendants

#### 1.    Trade Secret Misappropriation (Counts II & VIII)

Federal accuses Corporate Defendants of trade secret misappropriation under the Defend
Trade Secrets Act ("DTSA") and Ohio state law ("OUTSA").  The crux of Federal's trade secret
misappropriation allegations are: (1) Tousey took "Federal's confidential and proprietary
information" while he was a Federal employee.  (SAC ¶¶ 76-77, 200); (2) the "confidential and
proprietary information" that Tousey took and "exposed to Corporate Defendants" are "trade
secrets." (SAC ¶¶ 198-199); and (3) the Corporate Defendants "stole the entirety of Federal's
business as it relates to solid dose" pharmaceuticals and "now possess" Federal's trade secrets
"by virtue of Tousey's employment" and "have used" Federal's trade secrets.  (SAC ¶¶ 76-77,
80, 199, 202, 205-206.)  Federal eschews alleging actual facts in favor of conclusory allegations
that parrot the elements of a trade secret misappropriation claim.  (SAC ¶¶ 201-208.)

#### 2.    Tortious Interference with Economic Relations (Count IX)

The SAC alleges that Corporate Defendants tortiously interfered with: (1) Federal's
unspecified "business relationship with" and "contractual obligations to" Tousey (SAC ¶¶ 212-

214); and (2) Federal's "economic relationships" with "approximately twenty OEMs and other third-parties" that the SAC does not identify in the SAC.  (SAC ¶¶ 215-221.)

**Federal-Tousey Relationship(s).**  While the SAC clearly alleges that Federal had an employment relationship with Tousey, it also references an undefined "business relationship " and "contractual obligations" between Federal and Tousey.  (SAC ¶¶ 212, 213.)  To the extent that Federal is alleging some economic relationship *beyond* the employment relationship, the SAC fails to identify any specific relationship or agreement with Tousey related to this claim. The remainder of Federal's claim simply recites the elements of the cause of action, as follows:

> 212. Corporate Defendants were and are aware of Federal's business relationship with Tousey.

> 213. Corporate Defendants were and are aware of Tousey's contractual obligations to Federal.

> 214. Without justification or privilege, Corporate Defendants wrongfully and intentionally interfered with this business and contractual relationship by entering into an employment relationship with Tousey.[3]

**Federal-OEMs and Other Third-Party Relationships.**  Federal alleges that Corporate Defendants were "aware of Federal's economic relationships with approximately twenty OEMs and other third-parties" without specifically identifying these entities or articulating the nature of their relationships with Federal.  (SAC ¶ 215.)  In similarly (and impermissibly) vague fashion, Federal alleges that Corporate Defendants "are aware of certain contracts that exist between Federal and its OEMs and other third parties," without identifying any contracts.  (SAC ¶ 218.) The SAC does not allege that Corporate Defendants intentionally procured the breach of any contract, or prevented the formation of, or caused the termination of, any business relationship

---

[3] SAC ¶¶ 212-214.

with Federal.  Instead, the SAC concludes that "Corporate Defendants willfully and intentionally interfered with" Federal's unspecified "relationships" and "contracts."  (SAC ¶ 216, 219.)

### 3.    Breach of Contract (Count X)

Federal alleges that Corporate Defendants breached the NDA with Federal (attached to the FAC as Exhibit I) "by employing Tousey."  (SAC ¶ 64, 228; ECF No. 34-9.)  Federal further alleges that the alleged misappropriation of trade secrets is a breach of the NDA.  (*Id.*, ¶ 230.) The NDA contains a mandatory forum selection clause that requires disputes to be litigated exclusively in Los Angeles County, California.  (ECF No. 34-9, § 7.)  Specifically, the NDA provides:

> 7.    **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles. *The parties hereto agree that any and all actions or proceedings seeking to enforce any provision of, or based upon any right arising out of, this Agreement shall he brought exclusively in the state and federal courts located in the County of Los Angeles in the State of California.* …

(*Id.*, §7 (emphasis added).)  Instead of pleading facts that show performance of its obligations under the NDA, Federal concludes that:

> 229. Federal has performed all of its obligations under the NantWorks Non-Disclosure Agreement, and all conditions precedent to the enforcement of these agreements have been satisfied, waived, or abandoned.

(SAC ¶ 229.)

## IV.    LEGAL STANDARD

A motion to dismiss under F.R.C.P. 12(b)(6) should be granted where a complaint lacks sufficient factual allegations to state a claim "that is plausible on its face"—*i.e.*, one that allows the Court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To

make this assessment, the Court must accept all well-pleaded factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678-79. But the Court is not required to accept legal conclusions, threadbare recitals of a cause of action, or conclusory statements as true. *Id.* at 679, 681 ("It is the conclusory nature of respondent's allegations … that disentitles them to the presumption of truth"); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374-75 (6th Cir. 2011) (conclusory and unadorned allegations "not entitled to a presumption of truth"). The Court also disregards—rather than accepting as true—allegations in the complaint that contradict exhibits. *Cates*, 874 F.3d at 536-537; *Hall v. Sweet*, 666 F. App'x 469, 473–74 (6th Cir. 2016).

## V.      ARGUMENT

### A.      The SAC Fails to State a Claim for Tortious Interference (Count IX)

Federal alleges that the Corporate Defendants tortiously interfered with: (1) Federal's relationships with approximately twenty third parties; and (2) Federal's relationship with Tousey. (SAC ¶¶ 212-214, 215-217.) The SAC fails to state a plausible claim for either.

"The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Coun.*, 73 Ohio St.3d 1, 14 (1995). To state a claim for tortious interference with contract, Federal must allege facts to establish: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999); *BCG Masonic Cleveland, LLC v. Live Nation Entm't, Inc.*, 570 F. Supp. 3d 552, 557-558 (N.D. Ohio 2021). A claim for tortious interference with business relationships is similar but requires intentional interference "with prospective contractual

relations, not yet reduced to contract" to cause a party not to enter or to terminate a business relationship.  *BCG*, F. Supp. 3d at 557-558; *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1039-1040 (Ohio Ct. App. 2015).

### 1.  The SAC Fails to State a Plausible Claim for Interfering With Federal's Relationship With "OEMs and Other Third-Parties"

Federal's new claim that Corporate Defendants interfered with Federal's "economic relationships with approximately twenty OEMs and other third-parties" fails to state a claim for three reasons.  First, a claim for tortious interference requires the existence of a contractual or business relationship.  *Fred Siegel*, 707 N.E.2d at 858; *BCG*, F.Supp.3d at 557-558.  The SAC does not allege any facts sufficient to support the existence of any contractual or business relationship with any of the "approximately twenty OEMs and other third-parties."  (SAC ¶ 211-224.)  Federal skips this critical element and concludes generally that "Corporate Defendants were and are aware of Federal's economic relationships with approximately twenty OEMs and other third-parties."  (SAC  ¶ 215.)  This is a threadbare legal conclusion that is entitled to no weight.  *Iqbal*, 556 U.S. at 679, 681; *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (finding that vague allegation of interference with "unspecified business relationships" is "just a 'legal conclusion' …entitled to no weight."); *AT&T Corp. v. Overdrive, Inc*., No. 1:05CV1904, 2007 U.S. Dist. LEXIS 1921, at *34-35 (N.D. Ohio Jan. 10, 2007) (dismissing tortious interference counterclaim because it "fail[ed] to identify a contract which was breached because of party's alleged interference.").  The SAC fails to allege any facts to support a plausible inference that Federal has any contractual or economic relationship with the "OEMs and other third-parties."  Consequently, the SAC fails to state a plausible claim for tortious interference. *Cates*, 874 F.3d at 534; *Iqbal*, 556 U.S. at 678.

Second, a tortious interference claim also requires that Federal establish that Corporate Defendants intentionally procured a third party to breach its contract with Federal or caused a third party not to enter into or terminate a business relationship with Federal. *A & B-Abell*, 73 Ohio St.3d at 14; *Fred Siegel*, 707 N.E.2d at 858. The SAC does not allege any facts or even claim that Corporate Defendants caused any of the "OEMs and other third-parties" to breach their contract with, refuse to enter into, or terminate their relationship with Federal. *Id.*; *Iqbal*, 556 U.S. at 678. Instead, the SAC baldly concludes that "Corporate Defendants willfully and intentionally interfered with Federal's economic or business relationships" without specifying how such conduct impacted Federal's relationships with the unidentified "OEMs and other third-parties." (SAC ¶ 216.) This fails to state a claim because, even if true, it does not allow the Court to conclude Corporate Defendants are liable for tortious interference. *Iqbal*, 556 U.S. at 678; *Wilkey*, 366 F. App'x at 638 (allegation that defendant "interfered" with business relationships is a legal conclusion entitled to no weight); *Milacron LLC v. Advanced Fluids, Inc.*, No. 1:13-cv-364, 2013 U.S. Dist. LEXIS 150922, at *12 (S.D. Ohio Oct. 21, 2013) (dismissing complaint where plaintiffs failed to "provide any factual basis whatsoever to support their assertion that Defendant's accused actions actually resulted in a breach of a business relationship.").

Third, a claim for tortious interference requires a defendant to act with the purpose to interfere or knowledge that interference was substantially certain to result from its actions. *Ginn*, 30 N.E.3d at 1040-1041. The SAC merely concludes that "Corporate Defendants willfully and intentionally interfered with Federal's economic or business relationships." (SAC ¶ 216.) This is another bald legal conclusion entitled to no weight. *Iqbal*, 556 U.S. at 679, 681; *Napolitano*, 648 F.3d at 374-375; *Wilkey*, 366 F. App'x at 638. The SAC does not allege any facts to support

a plausible inference that Corporate Defendants are liable for tortious interference because they intended to or knew that their actions were substantially certain to interfere with any Federal relationship or contract. Thus, the SAC fails to state a plausible claim. *Iqbal*, 556 U.S. at 678.

### 2. The SAC Fails to State a Plausible Claim for Interference With Federal's Relationship With Tousey

The SAC also ambiguously alleges tortious interference with Tousey's alleged: (1) "contractual obligations to Federal"; and (2) "business relationship with" Federal. (SAC ¶¶ 212-214.) The contracts or relationships that Federal references are not clear. However, it is clear that the SAC fails to allege sufficient facts to state a plausible tortious interference claim.

**Tousey's Contractual Obligations to Federal.** The SAC lacks well-pleaded factual allegations to establish *any* element of a claim for tortious interference with contract. *Fred Siegel*, 707 N.E.2d at 858. Federal's claim is comprised entirely of threadbare legal conclusions unsupported by facts that the Court disregards in assessing whether the SAC states a plausible claim. *Iqbal*, 556 U.S. at 679, 681; *Napolitano*, 648 F.3d at 374-375.

A claim for tortious interference with contract obviously requires the "existence of a contract." *Fred Siegel*, 707 N.E.2d at 858; *BCG*, F. Supp. 3d at 557-558; *MTD Products Inc. v. Am. Honda Motor Co., Inc.*, 627 F. Supp. 3d 867, 884 (N.D. Ohio 2022) (dismissing tortious interference claim for failure to identify contract allegedly interfered with). The SAC does not allege any facts to establish the existence of any relevant contract between Federal and Tousey. Federal skips this steps and concludes that "Corporate Defendants were and are aware of Tousey's [unidentified] contractual obligations to Federal." (SAC ¶ 213.) This legal conclusion is insufficient to establish the existence of, or Defendant's knowledge of, any contract. *Iqbal*, 556 U.S. at 678; *Fred Siegel*, 707 N.E.2d at 858; *BCG*, F. Supp. 3d at 557-558. Federal may argue that Tousey breached the Mutual Confidentiality Agreement between Federal and Dorado

International, Inc., attached to the Complaint as Exhibit B (ECF No. 34-2), but this is not a contract between Federal and Tousey and consequently is irrelevant to Federal's tortious interference claim.[4]

A tortious interference with contract claim also requires a breach of that contract by the party with which the defendant interfered.  *Fred Siegel*, 707 N.E.2d at 858; *BCG*, F. Supp. 3d at 557-558.  The SAC does not allege that Corporate Defendants intentionally caused Tousey to breach his unspecified "contractual obligations to Federal."  Instead, the SAC merely concludes that "Corporate Defendants wrongfully and intentionally interfered"—without alleging a resultant breach of contract.  (SAC ¶¶ 213-214.)  Thus, the SAC fails to state a plausible claim.

A tortious interference claim also requires that Corporate Defendants *intended* to procure a breach of contract.  *Fred Siegel*, 707 N.E.2d at 858.  As noted, intentional interference requires a defendant to act with the purpose to interfere or knowledge that interference was substantially certain from its actions.  *Ginn*, 30 N.E.3d at 1040.  The SAC alleges that: "Federal informed NantWorks that Tousey was not available as he was an employee of Federal and had obligations to Federal"; and later concludes that: "Corporate Defendants wrongfully and intentionally interfered with this business and contractual relationship by entering into an employment relationship with Tousey."  (SAC ¶¶ 71, 214.)  The allegation that "Corporate Defendants wrongfully and intentionally interfered"—even if it could be construed as an allegation of intent—is a bare legal conclusion that should be disregarded.  *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010) (allegation that defendant "interfered" with business relationship is a legal

---

[4] The obligations under this Agreement expired according to its own terms on June 1, 2018 before Federal and Tousey entered into the Second Amendment to Business Opportunity Agreement Dated October 21, 2012 on May 1, 2020.  (*See* ECF Nos. 34-2, § A, 8; 34-6.)  Thus, breach of this agreement is impossible as a matter of law.

conclusion entitled to no weight).  The result is that the SAC fails to state a plausible claim that Corporate Defendants did anything intentionally, as required.  *Ginn*, 30 N.E.3d at 1040.

**Tousey's Business Relationship with Federal.**  The SAC fails to state a claim for tortious interference with Federal's undefined "business relationship with [sic] Tousey."  Again, the SAC concludes—without alleging supporting facts—that "Corporate Defendants wrongfully and intentionally interfered" with Federal's "business relationship" with Tousey "[w]ithout justification or privilege."  (SAC  ¶¶ 212, 214.)  These are legal conclusions that are not entitled to any weight on a motion to dismiss.  *Iqbal*, 556 U.S. at 679, 681; *Napolitano*, 648 F.3d at 374-375; *Wilkey*, 366 F. App'x at 638.  Federal's conclusory allegations fail to allege any facts that allow the Court to draw the inference that Corporate Defendants did anything intentionally and without privilege as required to state a plausible claim for tortious interference.  *A & B-Abell*, 73 Ohio St.3d at 14; *Kenyon v. Union Home Mortgage Corp.*, 581 F. Supp. 3d 951, 956 (N.D. Ohio 2022); *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 413-414 (Ohio Ct. App. 1999).  Indeed, the seven factors the Court considers to determine whether a Defendant acted improperly and without privilege are ignored in the SAC.  *Fred Siegel*, 707 N.E.2d at 860; *Dryden*, 135 Ohio App. 3d at 413-414.

The only business relationship that the SAC alleges facts to support is an employment relationship between Federal and Tousey and that "Tousey left his employment with Federal and began working for ImmunityBio."  (SAC ¶¶ 14, 41-42, 71, 76.)  The SAC does not describe the nature of Tousey's employment relationship or what "obligations [he owed] to Federal."  *Id.* ¶ 71.  Given that Federal has not alleged any facts to suggest otherwise—Tousey's alleged employment with Federal is at-will as a matter of law.  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("In Ohio, employment is generally at-will unless otherwise agreed

to by the parties."); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1040 (6th Cir. 1992).  This is confirmed by Federal's Employee Handbook, referenced and quoted in SAC paragraphs 44 through 46.  A portion of the Handbook is purportedly attached to the SAC as Exhibit D (SAC ¶ 44) and is attached to the FAC as Exhibit D (ECF No. 34-4).  The Handbook states: "Nothing in these guidelines is intended to modify the *at-will nature of any employee's employment* with the Company."[5]  Decl. of W. Paul Schuck ISO Corporate Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Schuck Decl."), ¶ 2, Ex. 1, at 5 (emphasis added).  This forecloses Federal's tortious interference claims related to Tousey because it is not tortious interference to hire an at-will employee as a matter of law.  *Rubber City*, 2023 WL 8529102 at *4 ("[T]he presentation of a different employment opportunity to at-will employees who are not bound by a non-compete agreement is insufficient to state a claim for tortious interference"); *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 2006 WL 3095701, at *7 (Case No. 87569, Ohio Ct. App., Nov. 2, 2006) ("any action by a defendant to hire any [at will] employee cannot constitute tortious interference with contract or business relationship."); *Mitchell v. Mid-Ohio Emergency Services, L.L.C.*, 2004-Ohio-5264, ¶ 29 (Ohio. Ct. App. 2004) ("If an employee is at-will, tortious interference with contract is not a viable cause of action.").

### B.    The SAC Fails to State a Claim for Breach of Contract (Count X)

Federal's claim for breach of contract fails for two independent reasons.  First, the claim is preempted under Ohio trade secret law and, second, Federal has failed to perform its obligations under the NDA.

---

[5] The Court may consider exhibits attached to a motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

1.      **Federal's Claim for Breach of Contract is Preempted by the OUTSA**

The OUTSA preempts breach of contract claims "that are based in some way on misappropriation of trade secrets." *Stolle*, 605 F. App'x at 484; *accord Hanneman Family Funeral Home and Crematorium v. Orians*, 2023 WL 6626674 at *4, *8 (Case No. 22-573, Ohio Oct. 12, 2023) ("the [Ohio] Uniform Trade Secrets Act should be understood to preempt other causes of action for misappropriation of trade secrets and causes of actions that are based in some way on misappropriation of trade secrets."); *Metron Nutraceuticals, LLC v. Cook*, 2023 WL 4565987 at *16 (Case No. 20:1803, N.D. Ohio, Jul. 18, 2023) (breach of contract claim based on same operative facts as trade secret misappropriation claim preempted); *Sal's Heating and Cooling Inc. v. BERS Acquisition Co., LLC*, 192 N.E.3d 537, 547-548 (Ohio Ct. App. 2022) (state law claims based on the "central theme" of "misappropriation of trade secrets" preempted); *Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*, 936 N.E.2d 122, 130 (Ohio Ct. App. 2010) (OUTSA § 1333.67(A) was "intended to prevent inconsistent theories of relief for the same underlying harm and has been interpreted to bar claims that are based solely on allegations of misappropriation of trade secrets or other confidential information.").

In analyzing whether a claim is preempted, the Court assesses "whether the state-law claim arises out of the same core of facts that would underlie a potential [UTSA] claim"—and, if so, the claim is preempted. *Hanneman*, 2023 WL 6626674, at *8; *Stolle*, 605 F. App'x at 484-485.  Claims arising out of the same core set of facts are preempted regardless of whether the underlying information ultimately constitutes a trade secret. *Hanneman*, 2023 WL 6626674, at *4, *9; *Stolle*, 605 F. App'x at 484; *Metron* at *16.

Federal's breach of contract claim is based on the same core facts as its trade secret misappropriation claim. *Supra*, §§ III.B.1, 3.  Specifically, the SAC alleges:

228. **Corporate Defendants** breached the NantWorks Non-Disclosure Agreement by employing Tousey. In doing so, they **breached the confidentiality and non-disclosure provisions by utilizing Federal's trade secrets for their own use**.

230. **Corporate Defendants**, without justification or privilege to do so, **misappropriated Federal's trade secrets in violation of *NantWorks Non-Disclosure Agreement*** by, among other things, poaching a key Federal employee (Tousey), using and disclosing Federal's confidential, proprietary, and trade secret information to further their business interests.

(SAC ¶¶ 228, 230 (emphasis added).)

Federal's breach of contract claim is not only premised on the same core set of facts as its trade secret misappropriation claim—but misappropriation of trade secrets *is the basis* for Federal's breach of contract claim.  The SAC expressly alleges that employing Tousey breached the NDA because this misappropriated Federal's trade secrets.  (SAC ¶¶ 228 ("Corporate Defendants breached the NantWorks Non-Disclosure Agreement by employing Tousey"), 230.) Federal relies upon the same allegations for its trade secret misappropriation claim alleging that "Corporate Defendants now possess this information [i.e., Federal's alleged trade secrets] by virtue of Tousey's employment."  (SAC ¶ 202.)  Accordingly, Federal's breach of contract claim mirrors its trade secret misappropriation claim and is preempted as a matter of law.  *Stolle*, 605 F. App'x at 484; *Hanneman*, 2023 WL 6626674, at *4, *8; *Metron*, 2023 WL 4565987, at *16.

In opposition to Tousey's motion for judgment on the pleadings, Federal argued that "preemption does not apply to contract claims" relying on *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1189 (Ohio Ct. App. 2017) and *Office Depot, Inc. v. Impact Office Products, LLC*, No. 9-cv-2791, 2011 WL 4833117, at *18 (N.D. Ohio Oct. 12, 2011).  (ECF No. 151 at PageID #: 4046.)  The Court in *Tomaydo-Tomahhdo* provided no analysis to support its remark that "preemption does not apply to contract claims" because the claims at issue were not preempted on the facts.  The breach of contract claims at issue in *Tomaydo-Tomahhdo* included claims that were based on opening a restaurant in violation of a non-competition clause and

soliciting employees to join the new business in violation of a share purchase agreement. *Tomaydo-Tomahhdo*, 82 N.E.3d at 1189-1191.  These claims were not preempted because they had an independent factual basis separate from trade secret misappropriation.  *Stolle*, 605 F. App'x at 485 (state-law claim with independent factual basis from OUTSA claim not preempted).  *Office Depot* is also distinguishable and not persuasive because the Court did not analyze the OUTSA and explicitly acknowledged that preemption of Plaintiff's breach of contract claims was not before the Court, confirming the Court's commentary is *obiter dicta*. *Office Depot*, 2011 WL 4833117, at *18.  Moreover, the breach of contract claims in *Office Depot* extended beyond trade secret misappropriation (i.e., "Plaintiffs are seeking not only protection of confidential information") providing an independent factual basis for the breach of contract claims to avoid preemption.  *Id.*; *Stolle*, 605 F. App'x at 485.  Here, Federal's breach of contract claim is based explicitly on trade secret misappropriation distinguishing the case from *Office Depot*.

Metron, a 2023 Northern District of Ohio case, is instructive here.  In *Metron*, this Court properly rejected *Tomaydo-Tomahhdo* and *Office Depot* explaining that each case "merely says that subsection (B)(1) excepts claims for breach of contract with no further analysis."  *Metron*, 2023 WL 4565987, at *18.  Sections 1333.67(A) and (B) of OUTSA provide, in relevant part:

> (A) Except as provided in division (B) of this section, sections 1333.61 to 1333.69 of the Revised Code displace conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.

> (B) Sections 1333.61 to 1333.69 of the Revised Code do not affect any of the following:

> (1) Contractual remedies, whether or not based on misappropriation of a trade secret;…

This Court in *Metron* analyzed §§ 1333.67(A) and (B) together concluding that exclusion of "contract remedies" in subsection (B) was narrower in scope than the general preemption in

subsection (A), which is not limited to "remedies." *Metron*, 2023 WL 4565987, at *17. As a result of this distinction, the Court held that the OUTSA "only exempts from preemption contractual remedies that differ from those available under [OUTSA]." *Id*. On the facts, the Court found that the "parties mutual confidentiality agreements contain no such remedies." *Id.*

Here, the NDA does not provide any remedies that are not available for a trade secret misappropriation claim. Moreover, Federal seeks *the identical relief* for its breach of contract and trade secret misappropriation claims. *Compare* SAC ¶¶ 209-210 *with* ¶¶ 232-233. Consequently, the "contractual remedies" exemption does not save Federal's breach of contract claim from preemption. *Metron*, 2023 WL 4565987, at *17-18.

### 2. Federal Cannot Establish That it Performed Its Obligations Under the NDA as Required to State a Plausible Claim

The NDA is governed by California law. (ECF No. 34-9, § 7.)[6] It requires: "any and all actions or proceedings seeking to enforce any provision of, or based upon any right arising out of, this Agreement" to be "brought exclusively in the state and federal courts located in the County of Los Angeles in the State of California." *Supra*, § III.B.3; ECF No. 34-9, § 7. This is a mandatory forum selection clause that requires litigation in Los Angeles. *Nor. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) (mandatory forum selection clause designates forum as exclusive forum); *Race Winning Brands, Inc. v. Crawford*, 601 F. Supp. 3d 279, 286 (N.D. Ohio 2022) ("A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum."). The NDA further includes a "No Waiver" provision that precludes the waiver of any provision of the NDA by

---

[6] The court may consider the NDA, which is referenced in the SAC and is purportedly attached to the SAC as an exhibit, in resolving a Rule 12 motion. *Bassett*, 528 F.3d at 430; *Hall v. Sweet*, 666 F. App'x 469, 473–74 (6th Cir. 2016).

conduct and requires any waiver to be in writing to be effective.  (ECF No. 34-9, § 5.)  The SAC does not allege any facts to support a waiver pursuant to Section 5 of the NDA.

A claim for breach of contract under California law requires proof of: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *Miles*, 236 Cal. App. 4th at 402.  By suing in this District, Federal has breached the plain language of the forum selection clause that mandates litigation in Los Angeles.  (ECF No. 34-9, § 7.)  Consequently, Federal cannot state a plausible claim for breach of contract in this District as a matter of law because Federal cannot establish that it performed or was excused from performing its obligations under the NDA. *Iqbal*, 556 U.S. at 678; *Miles*, 236 Cal. App. 4th at 402; *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771, at *9 (N.D. Ohio Mar. 31, 2011) (dismissing claim for breach of contract because plaintiff "failed to allege facts to prove his own performance, he cannot satisfy the second element of a breach of contract claim").

The SAC alleges that: "Federal has performed all of its obligations under the [NDA] and all conditions precedent to the enforcement of these agreements have been satisfied, waived, or abandoned."  (SAC ¶ 229.)  This legal conclusion must be disregarded because it contradicts the unambiguous terms of the NDA.[7]  *Cates*, 874 F.3d at 536-537.  In short, it is impossible for Federal to have "performed all of its obligations under the" NDA by suing in this District— because bringing suit in this District is a breach of the NDA.  Consequently, Federal's breach of

---

[7] This allegation is also entitled to no weight because it is a legal conclusion unsupported by well-plead factual allegations.  *Iqbal*, 556 U.S. at 679.  Based upon the docket of this case, the Court may take judicial notice that Federal has filed in this District and not California. *Electronic Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023)(in "a 12(b)(6) analysis" the Court may take judicial notice of "items appearing in the record of the case")(quoting *Golf Vill. North, LLC v. City of Powell*, 14F.4th 611, 617 (6th Cir. 2021)).

contract claim should be dismissed because it fails to state a plausible claim and the Court lacks

jurisdiction to transfer a single claim.  *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922,

933-934 (6th Cir. 2014) (affirming motion to dismiss under Fed. R. Civ. P. 12(b)(6) for breach of

forum selection clause without requiring transfer); *Wilson v. 5 Choices, LLC*, 776 F. App'x 320,

325-326 (6th Cir. 2019) (motion to dismiss under Fed. R. Civ. P. 12(b)(6) proper way to enforce

forum selection clause); *Race Winning Brands*, 601 F. Supp. 3d at 288 (dismissing claim for

breach of forum selection clause because "Section 1404 only authorizes the transfer of an entire

action, not individual claims").

### C. Federal's Claims for Tortious Interference and Breach of Contract Should Be Dismissed Without Leave to Amend

#### 1. Federal Cannot State a Plausible Claim for Breach of Contract in This District

Federal's breach of contract claim should be dismissed without leave to amend because

any amendment is futile.  *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 640

(6th Cir. 2018) (leave to amend should be denied where amendment futile).  Federal cannot

perform its obligations under the NDA in this District because suing here breaches the forum-

selection clause of the NDA foreclosing Federal's breach of contract claim.  *Supra*, § V.B.1.

Additionally, Federal cannot amend its claim to avoid preemption because the entire basis for

Federal's breach of contract claim is trade secret misappropriation.  *Supra*, § V.B.2.  Thus,

dismissal with prejudice is appropriate.

#### 2. Federal Cannot Amend Its Tortious Interference Claim Without Unduly Prejudicing Corporate Defendants

**Federal-Tousey Relationship.**  Federal's tortious interference claim is disingenuous.

Federal refuses to articulate Tousey's alleged "obligations" because it has admitted Mr. Tousey

is an "at-will" employee—precluding Federal's tortious interference claim as it relates to

Tousey.[8]  *Supra*, § V.A.2; Schuck Decl., Ex. 2 (Hicks Depo. at 297:22-298:4 ("Q. Do you agree there's no contractual restriction that prevented Tousey from leaving Federal to go to another employer? A. Mr. Tousey was an at-will employee at that time. He could leave for any reason or no reason.").  Consequently, dismissal of this claim with prejudice is proper because any amendment is futile.  *Pittman*, 901 F.3d at 640.

**Federal-OEMs and Other Third-Party Relationships.** The Court already granted Federal leave to amend its Complaint after fact discovery closed, confirming that Federal had a well-developed record to draft the SAC.  But Federal deliberately chose not to allege facts in the SAC because it knows the actual facts do not support a plausible claim for tortious interference. The result is that Federal has been given ample opportunity to state its case and it is now simply too late for any further amendment to the Complaint yet again without unduly prejudicing the Corporate Defendants.  *Pittman*, 901 F.3d at 640-641 (failure to cure deficiencies in previously allowed amendments and undue prejudice justify denying leave to amend).  As a result, this claim should be dismissed with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Corporate Defendants request that their motion to dismiss be granted in its entirety without leave to amend.

---

[8] Defendants reference Mr. Hicks' testimony only to illustrate Federal's inability to cure the defects in the SAC via any possible amendment, not as a basis for dismissal.

DATED: January 17, 2024                    Respectfully submitted,

                                           _/s/ C. Griffith Towle_
                                           C. Griffith Towle (Cal. State Bar 146401)*
                                             *gtowle@bartkolaw.com*
                                           W. Paul Schuck (Cal. State Bar 203717)*
                                             *pschuck@bartkolaw.com*
                                           Bartko LLP
                                           One Embarcadero Center, Suite 800
                                           San Francisco, California 94111
                                           Telephone: 415-956-1900
                                           Facsimile: 415-956-1152

                                           Lynn Rowe Larsen (0055824)
                                             *llarsen@taftlaw.com*
                                           William A. Doyle (0090987)
                                             *wdoyle@taftlaw.com*
                                           JoZeff W. Gebolys (0093507)
                                           *jgebolys@taftlaw.com*
                                           Taft Stettinius & Hollister LLP
                                           200 Public Square, Suite 3500
                                           Cleveland, OH 44114-2302
                                           Telephone: 216-241-2838
                                           Facsimile: 216-241-3707

                                           ***admitted pro hac vice***

                                           *Attorneys for Defendants NantWorks LLC,
                                           NantKwest, Inc., and ImmunityBio, Inc.*

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

I hereby certify that this document complies with Local Rule 7.1(f) because this case is on the standard track and because the length of this memoranda in support of a dispositive motion does not exceed twenty (20) pages.

_/s/ C. Griffith Towle_

C. Griffith Towle (admitted _pro hac vice_)

Attorney for Defendants NantWorks, LLC, NantKwest, Inc., and ImmunityBio, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2024, the foregoing was served via email, under

Fed. R. Civ .P. 5(B)(2)(f) upon Stephen S. Zashin, Ami Patel, and Corey N. Thrush, counsel for

Plaintiff.

                    /s/ *C. Griffith Towle*

C. Griffith Towle (admitted *pro hac vice*)

Attorney for Defendants NantWorks, LLC,
NantKwest, Inc., and ImmunityBio, Inc.