**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL MACHINERY AND EQUIPMENT COMPANY D.B.A. FEDERAL EQUIPMENT COMPANY, | ) ) ) ) | CASE NO. 1:21-CV-1422 |
| Plaintiff, | ) ) | JUDGE CHARLES E. FLEMING |
| | ) | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| v. | ) ) | |
| MICHAEL TOUSEY, et al., | ) ) | |
| Defendants. | ) ) | **MEMORANDUM OPINION AND ORDER** |

Before this Court is the Special Master's Report and Recommendation ("R&R") as to Defendant Michael Tousey's ("Tousey") Motion for Summary Judgment (ECF No. 261–62), Defendants ImmunityBio, Inc., NantWorks, LLC, and NantKwest, Inc.'s (collectively, "Corporate Defendants") Motion for Summary Judgment (ECF No. 275 & 275-1), and Plaintiff Federal Machinery and Equipment Company's ("Federal") Motion for Summary Judgment on Tousey's Third Amended Counterclaim.  (ECF No. 274 & 274-1).  (ECF No. 320).  Federal objected to the R&R.  (ECF No. 325).  Corporate Defendants responded to Federal's objections to the R&R.  (ECF No. 329-1).  Federal filed a reply brief in support of its objections to the R&R.  (ECF No. 333). Corporate Defendants responded to Federal's reply brief.  (ECF No. 334).  Tousey also objected to the R&R.  (ECF No. 323).  For the reasons stated below, the Special Master's R&R is **ADOPTED IN PART AND REJECTED IN PART.**

### I.    BACKGROUND

The Court adopts the "Factual Background" section of the R&R and incorporates it into this Order, including the finer details of the parties' actions and the contracts at issue.  (ECF No. 320, PageID #18044–49).  To set the stage, however, the Court first describes the players:  Federal,

1

the plaintiff in this case, sells used equipment relevant to the pharmaceutical and chemical manufacturing industries.  (ECF No. 220, Second Am. Compl., 5983).  It also offers training and consulting programs to teach those who purchase the equipment how to use it.  (*Id.*).  Before joining forces with Federal, Defendant Michael Tousey engaged in a similar business focused exclusively on pharmaceuticals, nutraceuticals, vitamins, and related products.  (*Id.* at PageID #5984).  Together, on October 31, 2012, Federal and Tousey formed Techceuticals, LLC: a consulting, training, and equipment dealer specializing in oral solid-dose ("OSD") tablets and capsules.  (*Id.*).  Though his title changed over time, Tousey headed the new LLC.  (*Id.* at PageID #5986–87).

Defendant NantWorks specializes, in part, in technology and healthcare.  (*Id.* at PageID #5983).  Its constituent company, Defendant NantKwest, specializes in healthcare.  Defendant ImmunityBio specializes in immunotherapy and merged with NantKwest; Nantkwest now operates under the name ImmunityBio.  (*Id.* at PageID #5984).

Before the merger, NantKwest sought Techceutical's training services.  (*Id.* at PageID #5988).  NantKwest signed a non-disclosure agreement ("NDA") to keep Techceutical's information concerning "commercial proposals, technical and financial information, know-how, data relevant to product and proposed products, employees, and information regarding business relations, suppliers, and customers" private.  (*Id.* at PageID #5989).  Impressed by Tousey's expertise, Nantworks wanted to employ him directly.  (*Id.* at PageID #5990).  On May 11, 2021, Tousey left Federal and began working for Corporate Defendants, taking with him a body of technical know-how and industry contacts that Federal now calls trade secrets.  (*Id.* at PageID #5990).

## II.    PROCEDURAL HISTORY

Federal sued Tousey and the Corporate Defendants in Cuyahoga County Common Pleas Court on July 20, 2021; Corporate Defendants removed the case to federal court three days later. (ECF No. 1, Not. of Removal; ECF No. 1-1, Verified Compl.).[1]  In its second amended complaint, Federal maintains claims against Tousey for misappropriation and/or use of trade secrets in violation of the Defend Trade Secrets Act (Count I); breach of the Mutual Confidentiality Agreement ("MCA") signed at the beginning of its dealings with Tousey, and the Second Amendment to the Techceuticals Operating Agreement ("OA"), caused by Tousey's misappropriation and use of Federal's trade secrets (Count III); misappropriation of trade secrets under Ohio law (Count IV); breach of the fiduciary duty owed to Federal by  Tousey due to his position and intimate knowledge of Federal's confidential trade secrets (Count V); failure to repay a $20,000 loan given to Tousey during his employment with Federal (Count VI); and a claim that Tousey tortiously interfered with Federal's economic relations when Tousey purportedly diverted its customers to Corporate Defendants (or others), directed equipment suppliers to pay Tousey sales commissions directly, and arranged to purchase, or provided leads for the purchase of, equipment for customers and competitors in exchange for direct commissions (Count VII).  (ECF No. 220, PageID #5995–6016).

As for the Corporate Defendants, the second amended complaint asserts claims for misappropriation of trade secrets they received from Tousey in violation of the Defend Trade Secrets Act (Count II); misappropriation and/or use of trade secrets under Ohio law (Count VIII); tortious interference with Federal's business relationship with Tousey, Federal's economic relationships with 20 original equipment manufacturers ("OEMs") and other third parties, and

---

[1]  The removal is based on this Court's diversity jurisdiction.

Federal's economic interests in its sales and purchases, which it alleges Corporate Defendants willfully and intentionally diverted elsewhere, its confidential or proprietary information that Corporate Defendants took, used, or disclosed for their own benefit, third party confidential or proprietary information that Corporate Defendants took from Federal, and Federal's business relationships, which Corporate Defendants interfered with (Count IX); and breaching the NDA by poaching Tousey and using and disclosing Federal's confidential and proprietary trade secrets (Count X). (*Id.*).

Tousey responded to the second amended complaint and filed his third amended counterclaim. (ECF No. 258, PageID #6746, 6777). In Count 1 of the counterclaim, Tousey accuses Federal of breaching the OA by (1) failing to pay Tousey's assistant's relocation costs; (2) failing to pay Tousey $5,000 for training Tousey provided at the Virtual Pharma Expo; (3) unilaterally changing Tousey's sales commission from 15–20% to 1%; (4) failing to properly account for proceeds from the sale of the "eTraining series"; and (5) failing to pay Tousey and/or Techceuticals for repair services. (*Id.* at PageID #6787–88). Count 2 asserts a claim for quantum meruit, alleging that Tousey conferred numerous benefits upon Federal for which he has not been compensated, including the relocation of himself and his assistant to Cleveland, repairing machinery that Federal's salespeople could sell to third parties, and providing training at the Virtual Pharma Expo. (*Id.* at PageID #6788–89). Count 3 demands an accounting of all amounts owed to Tousey under the OA. (*Id.* at PageID #6789–90). Count 4 alleges common law misappropriation of name and likeness and violation of the right of publicity under Ohio statutory law because Federal's website continued to use his name, likeness, and reputation after he left Federal. (*Id.* at PageID #6790–91). Similarly, under Count 5, Tousey alleges that Federal's continued use of his name, likeness, and reputation constituted a false endorsement under the

4

Lanham Act.  (*Id.* at PageID #6791).

On January 11, 2024, the Court appointed a Special Master to address pretrial matters, including any pretrial motions referred by the Court for the preparation of an R&R.  (ECF No. 219).  On September 30, 2024, all parties filed motions for summary judgment.  (ECF Nos. 261, 274, and 275).  On October 1, 2024, the Court referred these motions to the Special Master for the preparation of an R&R.  (Order [non-document] dated Oct. 1, 2024).  On December 30, 2024, the Special Master issued her R&R recommending that the Court grant in part and deny in part the motions for summary judgment.  (ECF No. 320, PageID #18043).

Tousey sought summary judgment on Counts I, III, IV, V, and VII (all of Federal's claims against him except the breach of Tousey's alleged obligation to repay the $20,000 loan).  (ECF No. 262).  Tousey also argued that the OA expressly limited his liability for the time during which he was a member of Techceuticals; to the extent that Federal's claims rely on events that predate May 2020 (while Tousey was a Techceuticals member), he should be shielded from liability on all Plaintiff's claims.  (*Id.* at PageID #7216–17).

The Special Master recommended that summary judgment on claims relying on pre-May 2020 conduct be denied because the OA's limitation of liability language is ambiguous.  (ECF No. 320, PageID #18057–58).  She recommended that Tousey's motion for summary judgment as to Counts I and IV be denied because there is a genuine issue of material fact as to whether (1) Federal's business model is a protectable trade secret; (2) Tousey maintained ownership of his intellectual property throughout his business relationship with Federal; (3) Federal's vendor and customer contact information is "secret" and/or "stale"; (4) Federal's Historical Sales Data, Revenue, Expense, and Financial Information are "stale"; and (5) Tousey misappropriated Federal's trade secrets.  (*Id.* at PageID #18059–81).  The Special Master recommended summary

judgment on Count III in Tousey's favor because the MCA is unambiguous and did not "serve as a blanket agreement relating to Tousey's entire relationship with Federal in perpetuity." (*Id.* at PageID #18081–83). Regarding Count V, the Special Master recommended that summary judgment be granted in Tousey's favor to the extent that he did not owe Federal fiduciary duties when he was Techceuticals's managing member (between November 9, 2012, and August 29, 2014); however, the Special Master concluded that there is a genuine issue of material fact as to whether Tousey owed fiduciary duties thereafter, and if so, whether he breached them. (*Id.* at PageID #18083–92). On Count VII, the Special Master recommended that any tortious interference occurring before July 20, 2017, is time barred, but a reasonable juror could find that Tousey tortiously interfered in Federal's economic relations thereafter. (*Id.* at PageID #18092–96). Lastly, the Special Master recommended that Tousey receive summary judgment on Federal's claims for punitive damages and attorneys' fees under the DTSA because neither the Federal employee handbook, the OA, nor the MCA contain the notice language required by the DTSA to trigger such damages. (*Id.* at PageID #18096–97).

Regarding Corporate Defendants' motion for summary judgment, the Special Master recommended summary judgment as to counts II, VIII, IX, and X be granted in Corporate Defendants' favor, resolving all claims against Corporate Defendants. (*Id.* at PageID #18097–107). She concluded that Corporate Defendants did not misappropriate Federal's trade secrets because there is no evidence that Corporate Defendants "ever received or accessed" the information Tousey purportedly took from Federal; in fact, Corporate Defendants instructed Tousey "not to take any intellectual property belonging to Federal." (*Id.* at PageID #18099). Since she recommended summary judgment in Tousey's favor on Federal's Count III (tortious interference with economic relations), and since Federal did not present evidence that Corporate

Defendants acted intentionally or caused the interruptions in Federal's business relationships, the Special Master also recommended summary judgment in Corporate Defendants' favor on Count IX. (*Id.* at PageID #18100–03).  Regarding Count X, the Special Master concluded that the NDA is "expressly limited to the *potential* business transaction or relationship between Corporate Defendants and Federal," did not extend to the "entire course of their relationship," and did not include a no-hire clause relating to Federal's at-will employees like Tousey.  (*Id.* at PageID #18104–07).

Like the second amended complaint, parts of Tousey's third amended counterclaim also survived dispositive motions.  The Special Master recommended the Court grant Federal's motion for summary judgment as to Counterclaim 1 on the issues of salary and relocation costs (which Tousey agreed to withdraw), reduced sales commission rate (which happened after the parties terminated the OA and its commission structure), and payment for repair services (which Tousey admits is unrelated to any agreement between the parties). (*Id.* at PageID #18108–13).  But she recommended that the Court deny Federal's motion as to reimbursement for Tousey's attendance at the Virtual Pharma Expo, because there is a genuine issue of material fact regarding the existence of an oral agreement for such reimbursement.  (*Id.* at PageID #18110).  She also recommended that the Court deny Federal's motion as to the "eTraining series" proceeds accounting, which finds footing in the OA language and of which Federal sold a portion and retained 100% of the proceeds. (*Id.* at PageID #18112).

Regarding Counterclaim 2, the Special Master recommended that the Court grant Federal's motion for summary judgment as to Tousey's salary and relocation cost claims (which Tousey agreed to withdraw), and his Virtual Pharma Expo claim for reimbursement (which Tousey is pursuing under a breach-of-contract theory and therefore cannot pursue under the theory of

quantum meruit).  (*Id.* at PageID #18113–15).  The Special Master recommended that the Court deny Federal's motion regarding Tousey's quantum meruit claim based on his repair services, since no contract covers that conduct.  (*Id.* at PageID #18115–16).  Tousey agreed to withdraw Counterclaim 3; thus, the Special Master recommended that the Court grant Federal's motion for summary judgment as to Counterclaim 3.  (*Id.* at PageID #18116–17).

The Special Master recommended that the Court deny Federal's motion concerning Counterclaim 4 because (1) there is a genuine issue of material fact as to whether Federal could continue using Tousey's name and likeness after he resigned; (2) there is record evidence showing that Federal used Tousey's name and likeness for commercial value; and (3) even if Tousey cannot show actual damages, he may be entitled to nominal or statutory damages if he succeeds.  (*Id.* at PageID #18117–20).  Similarly, the Special Master recommended that the Court deny Federal's motion on Counterclaim 5 because there is evidence that Tousey has a significant profile in the OSD industry, and Tousey's name and likeness on Federal's website could have led potential customers to believe that Tousey would be involved in training sessions.  (*Id.* at PageID #18120–21).  Regarding Federal's affirmative defenses, the Special Master concluded that Federal either failed to establish an absence of disputes of material fact or that other portions of the R&R rendered Federal's affirmative-defense arguments moot.  (*Id.* at PageID #18121–23).

The R&R also addressed Defendant Tousey's motion to strike (ECF No. 311), Corporate Defendants' objections to allegedly inadmissible evidence offered by Federal to oppose summary judgment (ECF No. 315), Federal's motion for leave to file revised declarations (ECF No. 318), and Corporate Defendants' motion for sanctions (ECF No. 239).  The Special Master recommended that the Court grant Federal's motion for leave to file revised declarations but recommended that the Court deny the other motions.  (ECF No. 320, PageID #18043–44).

8

Tousey and Federal filed objections to the R&R's recommendations regarding their respective motions for summary judgment; none of the parties objected to the Special Master's recommendations on the other motions.    (ECF Nos. 322, 323, and 325).    The Corporate Defendants filed a response to Federal's objections, asking the Court to adopt the R&R, and objected to the new arguments, citations, and evidence that Federal allegedly used in its objections to the R&R.  (ECF No. 329).  Federal responded to the Corporate Defendants' objections.  (ECF No. 333).  The Corporate Defendants filed a reply brief in support.  (ECF No. 334).

### III.    LEGAL STANDARD

When a party objects to a special master's legal conclusion, the court reviews the matter *de novo*; the court does not apply *de novo* review to legal conclusions to which the parties do not object.  Fed. R. Civ. P. 53(f)(4).  When acting on a special master's R&R, the court must give the parties notice and an opportunity to be heard, receive evidence, and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.  Fed. R. Civ. P. 53(f)(1).  Submitting a motion for summary judgment to a special master is not an opportunity to see what arguments work, and what arguments fall flat; a party that fails to raise an issue or argument before the special master waives that argument or issue.  *Murr v. United* States, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *Noco Co., Inc. v. Shenzhen Changxinyang Tech Co.*, No. 1:17CV2209, 2019 WL 1723358, at *6 (N.D. Ohio Apr. 18, 2019) (citing *McMillan v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 357, 358 (1992) (citing *Cedar Lumber, Inc. v. United States*, 857 F.2d 765, 767 (Fed. Cir. 1998))).  Courts do not entertain new arguments and evidence in objections to a special master's report because doing so is inefficient and reduces the special master's role to a dress rehearsal.  *Net2Phone, Inc. v. eBay, Inc.*, No. 06-2469, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008).

The parties' motions for summary judgment are governed by Fed. R. Civ. P. 56, which provides: "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party making or opposing a Rule 56 motion must support her assertion that "a fact cannot be or is genuinely disputed" by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017). Generally, "[c]redibility judgments and weighing of the evidence are prohibited." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).   The movant can meet this burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.   If the moving party meets its

10

burden, then the non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (quoting *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). Rather, the nonmovant must point to specific facts in the record that demonstrate a genuine issue of material fact for trial. *Id.* (citing *Fulson*, 801 F. Supp. at 4).

## IV. DISCUSSION

### A. Page Limits

As a matter of housekeeping, Federal's objection to the Special Master's R&R is thirty-four pages long. (ECF No. 325). Corporate Defendants argue that Federal's objection was related to a dispositive motion and, therefore, Federal exceeded the default 20-page mandated by Local Rule 7.1(f). (ECF No. 329-1, PageID #18758–59). Federal argues that Local Rule 7.1(f) does not limit the length of objections and, even if it did, the Court should allow Federal to exceed that limit because the Special Master granted Federal's prior request to exceed the page limits. (ECF No. 333, PageID #18813–14). Alternatively, Federal suggests the Court should find that Federal has demonstrated its need to use up to forty pages, and that imposing a page-limit now would give the Rule impermissible jurisdictional character. (*Id.* at PageID #18813–14).

In this judicial district, filings related to dispositive motions must not exceed twenty pages. L.R. 7.1(f). When a party exceeds the page limit, the court may strike the entire brief or stop reviewing after the twentieth page. *See Turner v. City of Akron*, No. 5:06CV3023, 2008 WL 45376, at *1 n.1 (N.D. Ohio Jan. 2, 2008) (striking an entire brief that exceeded the twenty page limit); *Marinkovic v. Hazelwood*, No. 1:20-cv-1485, 2022 WL 17405148, at *7 n.8 (N.D. Ohio Dec. 2, 2022) ("[W]hen a party files a document over the page limitations, the Court retains the discretion to strike the document in its entirety, deem the memorandum to have concluded on the

11

last page permitted by the LR 7.1(f) . . . or such other action as it deems appropriate.").

The Special Master and this Court are not one and the same: a page extension from one does not extend to filings with the other. Even if it did, the Special Master only granted Federal thirty pages for a past dispositive motion, which Federal exceeded here by four pages. (ECF No. 252, PageID #6700; ECF No. 325).

The parties' objections to the R&R are related to dispositive motions for purposes of page limits. In the interest of fairness, this Court will apply the Special Master's previously extended page limitations and allow Federal thirty pages. That said, the page limits in the Local Rules apply to matters before this Court. The parties must ask permission for an extension—not forgiveness after they have already taken one. The Court **STRIKES** pages thirty-one through thirty-four in Federal's objection to the R&R.

### B. New Evidence and Arguments

Next, Corporate Defendants argue that the Court should not consider any evidence that Federal cites in its objection to the Special Master's R&R that Federal did not also cite in its motion for summary judgment. (ECF No. 329-1, PageID #18757–58). Corporate Defendants attached a copy of Federal's objection to its response to Federal's objection to the Special Master's R&R. (*Id.* at PageID #18762–800). In that attached copy, Corporate Defendants highlighted instances in which Federal cited evidence and cases, or made arguments, that that did not appear in Federal's motion for summary judgment. (*Id.*). Federal argues in response that the Court must allow it to make new arguments to point out and explain errors in the R&R. (ECF No. 333, PageID #18814–15).

When objecting to any R&R, whether issued by a special master or magistrate judge, a party is limited to the evidence and arguments that it raised below. A party may cite new cases to

expand on existing arguments but may not do so to proffer new arguments or theories it did not previously raise. *See, e.g., Noco Co., Inc. v. Shenzhen Changxinyang Tech Co.*, No. 1:17CV2209, 2019 WL 1723358, at *6 (N.D. Ohio Apr. 18, 2019) (citing *McMillan v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 357, 358 (1992) ("Moreover, courts have continuously followed the general rule that an issue or argument not raised in the trial court, here before the special master, is waived."); *see Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act [and] effectively nullify the magistrate judge's consideration of the matter.").

To the extent that Federal cited evidence not included in either Federal's motion for summary judgment or the R&R, this Court will not consider that evidence. If a party used a new case or theory to substantiate a new argument, as opposed to explaining why the Special Master's analysis was incorrect or to support an existing argument, the Court will not consider those new theories, arguments or cases.

Establishing error in the R&R does not open the door for a party to make new arguments that it did not make at summary judgment before the Special Master. For example, as this Court notes later in this opinion, the Special Master *did* omit the word "or" when quoting a portion of a contract between the parties. (*Compare* ECF No. 320. PageID #18105–06 *with* ECF No. 278-3, PageID #10894). Federal was correct to point out that error and that it would be unreasonable to expect Federal to anticipate that mistake. However, after pointing out that error, Federal argues that the Court should interpret the contract as ambiguous even though, at summary judgment, Federal argued that the NDA was unambiguous as to what it covered. (*Compare* ECF No. 303, PageID #16099 *with* ECF No. 333, PageID #18824). In conducting *de novo* review, the Court will

13

not consider the new interpretation that Federal proffered in its objection.

### C.  Trade Secrets

Federal claims that Tousey and Corporate Defendants misappropriated Federal's trade secrets under both the Ohio Uniform Trade Secrets Act (OUTSA) and the Defend Trade Secrets Act (DTSA).  (ECF No. 220, PageID #5995–6000, 6002–04, 6008–10).  To successfully bring an OUTSA claim, the claimant must prove: "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019).  "For the DTSA, a plaintiff must show the existence of a protectable trade secret and misappropriation of the trade secret." *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F. Supp. 3d 652, 682–83 (S.D. Ohio 2023).

Under OUTSA, protected trade secrets include "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers."  Ohio Rev. Code Ann. § 1333.61(D) (West 2025).  Similarly, DTSA protects as trade secrets "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes."  18 U.S.C. §1839(3).

To qualify as a trade secret under both OUTSA and DTSA, the information must: (1) "derive[ ] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and (2) be "the subject of efforts that are reasonable under the

14

circumstances to maintain its secrecy." Ohio Rev. Code Ann. § 1333.61(D)(1) & (2); 18 U.S.C. §1839(3)(A) & (B). Information that is generally known, publicly available, or readily ascertainable by skilled individuals in the plaintiff's field is not entitled to trade secret protection. *R.J. Heating Co. v. Rust*, No. 1:22-cv-00710, 2024 WL 1307114, at *3 (N.D. Ohio Mar. 27, 2024) (citing *Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 WL 1765918, at *3 (S.D. Ohio Feb. 3, 2023). Under OUTSA, courts consider six factors to determine whether information is a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business; (3) the precautions taken by the information's holder to guard the information's secrecy; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort and money the holder expended to obtain and develop that information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2016 WL 4468001, at *6 (N.D. Ohio Aug. 24, 2016).

A plaintiff must describe its alleged trade secret with sufficient definiteness and particularity to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade. *Caudill,* 53 F.4th at 380–81. Failure to specifically identify an alleged trade secret is grounds for summary judgment against the plaintiff. *Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 590, 600 (N.D. Ohio 2023).

Federal identified three categories of information, alleged that they were trade secrets, and alleged that Defendants misappropriated those trade secrets. (ECF No. 303, PageID #16080–83). Those categories are (1) "Federal's unique business model with respect to its operation of Techceuticals which created a body of valuable and comprehensive knowledge pertaining to the highly competitive industry of specialized equipment manufacturers"; (2) "Key contact

15

information (identity of names and contact information) of Federal's historical business relationships, including OEMs, customers, and other entities and persons with which Federal did business or had prospective business opportunities"; and (3) "Federal's historical and compiled sales data, revenue, expense and financial information." *Id.* (citing ECF No. 272-11, Trade Secret Identification, PageID #10204, 10211, 10214).  Defendants argued that they should be awarded summary judgment regarding all three purported trade secrets because Federal failed to sufficiently identify them.  (ECF No. 262, PageID #7218–21; ECF No. 277, PageID #10801–09).

The Special Master reviewed each trade secret and recommended that the Court deny Tousey's and Federal's motions for summary judgment regarding all three trade secrets.  (ECF No. 320, PageID #18062–78).  Tousey objected to the Special Master's recommendation regarding Trade Secrets #1 and #2, but he did not object to the Special Master's recommendation to deny summary judgment as to Trade Secret #3.  (ECF No. 323, PageID #18156–61).  Federal objected to the Special Master's recommendation to dismiss the misappropriation of trade secret claims against the Corporate Defendants.  (ECF No. 325, PageID #18578–97).

### 1. Federal's Objection to the Special Master's Recommendation to Summarily Dismiss the Trade Secret Claims Against the Corporate Defendants.

Federal objected to the Special Master's recommendation to dismiss the misappropriation of trade secret claims against the Corporate Defendants.  (ECF No. 325, PageID #18578–97). Federal argues that the Special Master (1) failed to analyze whether the Corporate Defendants improperly acquired, or had reason to know of the misappropriation of, trade secrets; and (2) failed to consider that evidence related to Tousey's use of Federal's trade secrets could also be evidence of the Corporate Defendant's liability because, at the time that Tousey used the trade secrets, he was acting as Corporate Defendants' agent and/or employee.  (*Id.*).  In response, Corporate

16

Defendants point out that the Special Master *did* address whether Corporate Defendants had "reason to know" of Tousey's actions (and concluded that they did not).  (ECF No. 334, PageID #18837–38).  Corporate Defendants also reason that the Special Master did not discuss the doctrine of respondeat superior because Federal's motion for summary judgment did not argue that Corporate Defendants were vicariously liable for Tousey's conduct.  (*Id.* at PageID #18838).

In response to Corporate Defendants' motion for summary judgment, Federal argued that Corporate Defendants improperly acquired its trade secrets.  (ECF No. 303, PageID #16096).  Federal stated, "Tousey knowingly took and did not return volumes of Federal's intellectual property."  (ECF No. 303, PageID #16096).  In support of this statement, Federal cited Tousey's response to Interrogatory No. 3, which states, "with the consent of Matthew Hicks and for purposes of providing services pursuant to a separation agreement, Tousey retained a thumb drive with various materials on it. . . . [A]long with another thumb drive[,] Tousey has subsequently found 10 other storage devices, which may or may not have information stored in them which Federal claims (and, in many cases Tousey disputes) it owns . . . .  Tousey also possesses emails in his gmail account which were sent from his Techceuticals account and text messages in his cell phone which may or may not be 'Federal information.'"  (ECF No. 305-2, Tousey Resp. to Interrog. No. 3, PageID #16265).

Next, Federal asserted that "[Corporate Defendants] willfully and maliciously acquired this information after Tousey, on at least 2 occasions, informed [Corporate Defendants] that Federal owned Techceuticals, including its valuable intellectual property."  (ECF No. 303, PageID #16096).  Federal directed the Special Master to ECF No. 324-12, PageID #18401, which is a letter from Tousey to Corporate Defendants.  It states, "Less than a year ago against my better judgment I allowed Techceuticals to be absorbed by Federal Equipment.'" (*Id.*).  Federal also pointed to ECF

17

No. 273-14, PageID #10581, which is an email from Tousey to Corporate Defendants (Lennie Sender).  It states, "Federal took over Techceuticals last year including my IP."

Federal continued, "Moreover, [Corporate Defendants] cannot avoid the direct verbal and written communications from Covitt." (ECF No. 303, PageID #16096).  To support that statement, Federal cited ECF No. 268, Dep. of Adam Covitt, PageID #9452, 9466–67.  First, in response to being asked whether Corporate Defendants were prohibited from hiring Tousey, Covitt stated, "On one of the first Zoom calls that we were on, Patrick Soon-Shiong [Corporate Defendants] made the comment when I made the introduction to Mike Tousey: This guy is great; he should be working for our company.  I sternly said: I'm sorry, Patrick.  He works for us.  That's not going to happen.  It was my understanding that we had an NDA.  We had a master services agreement.  And my client, your, your client [Corporate Defendants], would not go behind my back, negotiate and hire my employee.  I was acting in good faith with [Corporate Defendants].  They were not."  Later in the deposition appears the following exchange:

> Q.  Are you aware of any evidence that any of the corporate defendants were aware of what you just described that Mr. Tousey had provided consulting services to others without having the revenue run back through Techceuticals or Federal?
>
> A.  I had a discussion with Richard Adcock immediately after they had hired Mr. Tousey, and in that discussion, I told him of the, the perceived theft of this situation, and Mr. Adcock's response was "maybe I've hired a bad actor."
> . . .
> Q.  But my question was different, though.  I was asking whether or not you have any knowledge, okay, that any of the corporate defendants were aware of the circumstances where Mr. Tousey had performed work for others, okay, and had kept the revenue without passing it back to either Techceuticals or Federal.
> . . .
> A.  I don't think that your client, the corporate defendant had knowledge of that until Mike Tousey went to work for them.  And it was discussed and we—I mean, obviously, they received the documentation showing that.

18

Q.  So whatever they may or may not have learned in connection with this lawsuit?

A.  Prior to the lawsuit, I don't think they knew.

(*Id.*).  To summarize, Federal established that Corporate Defendants knew (1) Federal owns Techceuticals's intellectual property; (2) Tousey was a Federal employee, and Corporate Defendants could not hire him; and (3) Tousey did not route all of his commissions through Techceuticals.  This evidence does not establish that Corporate Defendants knew (or should have known) that they acquired Federal's trade secrets—information about its business model (Trade Secret #1), key contact information (Trade Secret #2), or its historical sales data, revenue, expense, and financial information (Trade Secret #3).  Regarding Federal's intellectual property, the Special Master points out that Corporate Defendants expressly instructed Tousey during their onboarding process "not to take any intellectual property belonging to Federal."  (ECF No. 320, PageID #18099) (quoting ECF No. 314-7, Adcock Dep., PageID #17929–30) ("On the onboarding process, there is for all employees, not just for [Tousey], that we tell them we do not want anybody else's intellectual property.").

Objecting to the R&R, Federal directs the Court to additional record evidence it claims supports its argument that Corporate Defendants knew or had reason to know that it improperly acquired Federal's trade secrets.  (ECF No. 325, PageID #18587–88).  But the Special Master was not required to scour the record in search of evidence supporting or refuting a party's claim.  *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligate to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").  It was not error for the Special Master to review only that evidence to which

19

Federal had previously directed her.

As for whether the Special Master should have addressed Corporate Defendants' vicarious liability for Tousey's conduct, this Court's review is confined to that which the parties argued before the Special Master.  *Murr v. United* States, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  Federal did not previously assert or argue a vicarious liability claim.  In the second amended complaint, Federal accused Corporate Defendants of misappropriating its trade secrets directly.  (ECF No. 220, PageID #6009) (alleging that, after receiving Federal's trade secrets from Tousey, Corporate Defendants willfully "misappropriated and used Federal's trade secrets related to products or services by among other things, using and disclosing Federal's confidential, proprietary, and trade secret information to further their business interests" and "to directly compete with Federal").  Consistent with that claim, in response to Corporate Defendants' motion for summary judgment, Federal argued that Corporate Defendants themselves both used (ECF No. 303, PageID #16093–95) and acquired through improper means (*id.* at PageID #10696) Federal's trade secrets.  To the extent that Federal claims that Corporate Defendants *acquired* their trade secrets from Tousey, that is a direct, not vicarious, claim.

Even if Federal had "a strong argument for vicarious liability," the Court "find[s] no injustice in barring [Federal] from pursing a claim it chose not to pursue below."  *Ohio State Univ. Redbubble, Inc.*, 989 F.3d 435, 444 (6th Cir. 2021) (holding that the plaintiff waived a vicarious liability argument because it did not articulate a legal claim for vicarious liability below).  This Court **ADOPTS** the Special Master's recommendation as to Counts II and VIII. As such, the Court **DISMISSES** Federal's claims for trade secret misappropriation against the Corporate Defendants.

### 2. Tousey's Objection to the Special Master's Recommendation to Deny Summary Judgment in Tousey's Favor on Trade Secret #1

The Special Master concluded that a jury could find Federal's business model constitutes

a protectable combination trade secret.  (ECF No. 320, PageID #18062).  Tousey objected to the Special Master's recommendation and asserts that Federal failed to identify Trade Secret #1 with the requisite particularity.  (ECF No. 323, PageID #18156).

A new combination of known steps or processes can be entitled to trade-secret protection and is referred to as a "combination trade secret." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006).  Although a combination trade secret need not show that any individual item within the combination is unique, the plaintiff must establish that "the combination of known elements or components is unique" and "the uniqueness of the combination is critical to establishing trade-secret protection."  *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380 (6th Cir. 2022) (per curiam) (citing Melvin F. Jager, 1 *Trade Secrets Law* §5:28 (Oct. 2021)).

In *Caudill*, upon which Federal relies, Caudill Seed manufactured and sold glucoraphanin—a nutritional supplement derived from broccoli seeds.  *Id.* at 375–76.  Jarrow purchased glucoraphanin from Caudill Seed to make a broccoli-seed extract called BroccoMax, which it sold to consumers.  *Id.* at 376.  Jarrow became Caudill Seed's largest purchaser of glucoraphanin.  *Id.*  When Jarrow decided that it wanted to manufacture its own glucoraphanin, it hired Caudill Seed's Director of Research, Kean Ashurst.  *Id.*  Ashurst gave Jarrow "a curated collection of broccoli product research compiled over his nine years" with Caudill Seed, enabling Jarrow to manufacture BroccoMax with its own glucoraphanin within four months of Ashurst's hiring.  *Id.* at 376–77.

Caudill Seed sued Jarrow for misappropriating its trade secrets, including "research and development on supplements, broccoli, and chemical compounds" (the "R&D trade secret").  *Id.* at 377.  A jury found that Jarrow had misappropriated the R&D trade secret.  *Id.*  Jarrow moved

21

for judgment as a matter of law and a new trial, arguing that Caudill Seed's R&D trade secret was an insufficiently defined, "kitchen-sink theory of trade secrets." *Id.* at 377–78. The district court denied the motions, and Jarrow appealed. *Id.* at 378.

Affirming the district court, the Sixth Circuit explained that Caudill Seed's R&D trade secret was, in fact, a protectable, combination trade secret. *Id.* at 381. Substantial evidence showed that Ashurst's research projects were based on Caudill Seed's previous discoveries; that Ashurst curated the broccoli product research collection while working for Caudill Seed; that Caudill Seed tested the microbial contents of its products and its competitors', which gave Caudill Seed a competitive advantage; and that Caudill Seed maintained documents regarding the glucoraphanin manufacturing process, which "would have saved industry employers time and money had [they] had that document in [their] possession." *Id.* at 381–82 (internal quotations omitted). The Sixth Circuit concluded that the R&D trade secret was sufficiently defined as "the work that Caudill [Seed] had performed before Ashurst arrived, the specific work that Ashurst performed while at Caudill, and the 'body of knowledge' that Ashurst subsequently took to Jarrow." *Id.* at 382.

Contrasting *Caudill* with this case, Federal described Trade Secret #1 as "Federal's unique business model with respect to its operation of Techceuticals, which created a body of valuable and comprehensive knowledge pertaining to the highly competitive industry of specialized equipment manufacturers." (ECF No. 272-11, PageID #10204; ECF No. 278-7, PageID #10938). Like *Caudill*, Federal relied on a "combination trade secret" approach and identified seven components that comprised the combination: (i) Techceuticals; (ii) Federal's relationships with manufacturers of equipment (OEMs); (iii) Federal's knowledge and data related to OEMs' sales practices and equipment offerings; (iv) Federal's training programs; (v) Federal's customer relationships; (vi) consulting and customer support services; and (vii) Federal's knowledge

22

regarding lab facilities.  (ECF No. 272-11, PageID #10204–05; ECF No. 278-8, PageID #10938–39).

Federal conflates the confidential information that it uses in its business with information about its business model.  It refers often to Tousey's access to specific information about clients, products, and pricing to classify its business model as a trade secret.  (*Id.*).  But when the Court assesses whether a *business model itself* is a combination trade secret, the Court does not assess whether any specific client, vendor, product, training, or pricing is a trade secret on its own.  Instead, the Court determines whether the business model is unique and produces a superior product entitling it to protection as a trade secret under OUTSA and DTSA.  *Caudill*, 53 F.4th at 380.  While trade secret law might protect a business's compilation of client and vendor information, this does not mean that having clients and vendors elevates that *business model* to a protectable trade secret.

Analogizing its case to *Caudill*, Federal points to the way that it developed a particular process in its lab to illustrate its combination trade secret:

> So the technical know-how, if you want to reference, would be the process flow or the steps that need to be taken in the process or the equipment needed to do those steps or the conditions of the room in order to do those steps.

(ECF No. 303, PageID #16086).  Like its client and vendor information, the proper use of OSD manufacturing equipment may be a trade secret if it is not generally known; but the technical know-how a person needs to effectively use OSD machinery is not Federal's business model.[2]  The

---

[2] Tellingly, on the same page of its opposition to Tousey's motion for summary judgment, Federal *cannot seem to agree with itself* as to what Trade Secret #1 actually is.  In one sentence, it is the technical know-how a person needs to effectively use OSD machinery.  (*Id.*).  In another, it is the methods and way that the training was done.  (*Id.*).  Neither of these reach the breadth of Federal's claimed Trade Secret #1, which is its entire business model.  (*See* ECF No. 272-11, PageID #10204) (identifying Trade Secret #1 as "Federal's unique business model with respect to its operation of Techceuticals which created a body of valuable and comprehensive knowledge pertaining to the highly competitive industry of specialized equipment manufacturers").

*Caudill* R&D trade secret was sufficiently definite because it had limits—it was Caudill Seed's existing broccoli-based research and Ashurst's expansion of that research, all of which Ashurst took with him to Jarrow.  *Caudill*, 53 F.4th at 382.  Here, Federal does not ask the Court to find that its lab layout (*id.* at PageID #10942), the technical know-how and steps necessary to create a tablet or capsule with a customer's active pharmaceutical ingredient (*id.* at PageID #10943), or its training materials specifically tailored to the OEMs' equipment (*id.* at PageID #10940), are trade secrets; rather, Federal asks the Court to conclude that its entire business model is a unique trade secret entitled to protection. (*See* ECF No. 272-11, PageID #10204–05) (describing the seven individual components that comprise alleged Trade Secret #1).  While all those categories of information could be trade secrets, they do not demonstrate that Federal's business model itself is unique.   The same problem plagues Federal's description of how it kept Trade Secret #1 confidential; rather than stating how it kept its business model confidential, Federal explains how it kept categories of specific information that it used in its business confidential.  (*Id.* at PageID #10209–11).

Federal does not identify any competitors or offer evidence that its competitors do not have substantially similar business models. (*See id.* at PageID #10938–45).  This is distinguished from *Caudill*, in which Caudill Seed engaged in specific efforts to stay ahead of its competition.  (ECF No. 320, PageID #18065) (citing *Caudill*, 53 F.4th at 381–82).  Federal also does not account for the fact that, prior to its collaboration with Tousey, it apparently had limited technical know-how related to OSD manufacturing; that know-how came from Tousey.  (ECF No. 278–7, PageID #10938; *see id.* at PageID #18044 (describing the parties' backgrounds); ECF No. 278-2, Adam Covitt Dep., PageID #10884 (acknowledging Tousey's industry knowledge and expertise)).  This is unlike *Caudill*, in which Ashurst worked "with previous discoveries by Caudill [Seed] to work

24

on new projects." (*Id.* at PageID #18065) (quoting *Caudill*, 53 F.4th at 381–82).  While true that Tousey's employment by Corporate Defendants likely sped up their efforts to become competitive in the OSD industry, it was his own intangible know-how, not Federal's, that provided those efficiencies.  This is again unlike *Caudill*, in which Ashurst took much more than his own expertise when he went to work for Jarrow.  (*Id.* at PageID #10865) (quoting *Caudill*, 53 F.4th at 381–82).

While some components of Trade Secret #1 might independently be trade secrets, Federal did not show that those components combine to create a separate and unique business model that is not generally known in the industry.  That a portion of the business model could be a trade secret does not elevate the entire business model to trade secret status.  In attempting to identify it as such, Federal's description of Trade Secret #1 is significantly broader than that which the plaintiffs in *Caudill* sufficiently alleged.  Federal has failed to sufficiently define Trade Secret #1.  Thus, this Court **REJECTS** the R&R with regards to Trade Secret #1, and **GRANTS** Tousey summary judgment with regards to Trade Secret #1.

### 3.  Trade Secret #2

Federal alleges that Trade Secret #2 is its key contact information, including the names and contact information of Federal's historic business relationships like OEMs, customers, and other entities and persons with which Federal did business or had prospective business opportunities. (ECF No. 278–7, PageID #12–15).  Defendants argued that this information cannot be a trade secret because (1) the third-party companies repeatedly testified that their contact information is not secret and is easily ascertainable; (2) the contact information, standing alone, cannot be a trade secret and must be in compilation, and Federal's lists of contact information are not sufficient "compilations" that warrant protection; (3) Federal's description of how the contact information, prior experience, and relationships combine to form the trade secret is vague; and (4) some of the

25

information is too outdated to receive trade secret protection (ECF No. 275-1, PageID #10757–60).

The Special Master gives four reasons why this Court should reject Defendant's argument regarding Trade Secret #2. First, Federal's disclosure cites several compiled contact documents. (ECF No. 320, PageID #18073). Second, there is a genuine dispute of material fact as to whether the contact information is secret. (*Id.* at PageID #18074). Third, Federal's description of Trade Secret #2 is not vague because Federal disclosed specific documents and contacts that it alleges were part of the trade secret. (*Id.* at PageID #18075–76). Finally, there is a genuine issue of material fact as to Defendants' staleness argument because Federal has offered evidence that this information still has relevant potential uses. (*Id.* at PageID #18076).

Tousey's objection to the Special Master's conclusions on Trade Secret #2 does not argue that the Special Master got it wrong; rather, he seeks to limit Trade Secret #2 to the information compiled in Exhibit 2 of Federal's Trade Secret Disclosure. (ECF No. 278-7, PageID #10945–48; ECF No. 272-11, PageID #10211–10214). Federal did not respond to this objection.

The Court need not exclude evidence of contact information other than that which appears in Federal's Exhibit 2 at this juncture. At summary judgment, it is enough that Federal has included sufficient evidence to preclude summary judgment as to Trade Secret #2 in its entirety. To the extent Defendants believe additional evidence is inadmissible at trial, they will have the opportunity to file an appropriate motion before trial. The Court therefore **ADOPTS** the R&R regarding Trade Secret #2. Tousey's motion for summary judgment as to Trade Secret #2 is **DENIED**.

### D. Breach of Fiduciary Duty

Federal alleged that Tousey owed it a fiduciary duty because, even though the OA did not

expressly create such a duty, O.R.C. §§ 1706.31(B) and 1706.311(A) and (B), and the common law, imposed that duty on Tousey.  (ECF No. 299, PageID #15828–31).  Federal claimed that Tousey breached that duty by self-dealing while acting as Federal's employee, purportedly usurping business opportunities from Techceuticals.  (*Id.* at PageID #15831–32).  Federal also argued that the economic loss doctrine does not bar its breach-of-fiduciary-duty claim because Tousey committed *intentional* torts, and because Federal's damages include lost competitive positioning, goodwill, and investment in time and energy.  (ECF No. 299, PageID #15832–33).  The Special Master agreed with Federal and concluded that the OA is silent regarding fiduciary duties owed by Tousey to Techceuticals.  (ECF No. 320, PageID #18088).  The Special Master also stated:

> Second, Tousey believes that the Operating Agreements provision explicitly allowing competition . . . § 5.7, somehow completely negates the duty of loyalty. . . .  But the Special Master agrees with Federal that notwithstanding that provision, it is still an open question of whether that provision would allow Tousey to act in a way that is *detrimental* to Federal.

(*Id.*).

Tousey objected to this conclusion on three grounds: (1) since Techceuticals was member managed, no fiduciary duties extended to him as a member by operation of O.R.C. § 1706.31(A); (2) the Special Master's interpretation that the OA does not allow Tousey to compete to Federal's detriment improperly negates the OA's language allowing Tousey to compete; and (3) the economic loss doctrine applies and is an effective defense against the breach of fiduciary duty claim. (ECF No. 323, PageID #18161–66).  Because issues one and two are dispositive, the Court need not address issue three.

First, Tousey is correct that members of a manager-managed LLC do not owe fiduciary duties to the LLC as a matter of Ohio law.  Indeed, Ohio Rev. Code Ann. § 1706.31(A) (West

27

2026) provides:

> Unless either a written operating agreement for the limited liability company or a written agreement with a member establishes additional fiduciary duties, in the event that there have been designated one or more managers to supervise or manage the activities or affairs of the limited liability company, the only obligation a member owes, in the member's capacity as a member, to the limited liability company and the other members is to discharge the member's duties and obligations under this chapter and the operating agreement in accordance with division (E) of this section.

According to §1706.31(E):

> A member shall discharge the member's duties to the limited liability company and the other members under this chapter and under the operating agreement and exercise any rights consistent with the implied covenant of good faith and fair dealing.

The Ohio LLC statute is not ambiguous: If a manager-managed LLC does not create fiduciary duties for its members in its operating agreement, then members do not owe fiduciary duties to the LLC.  Techceuticals was a manger-managed LLC until May 1, 2020.  (ECF No. 272-7, PageID #10135).  The OA does not create fiduciary duty for its members.  Therefore, Tousey did not owe any fiduciary duty to Federal in his capacity as a Techceuticals member.

Moreover, the Techceuticals OA expressly states that Tousey was free to compete with Techceuticals: "Members are not restricted from engaging in any activity, even if such activity is in competition with the Company."  (ECF No. 262-1, PageID #7333).  The OA does not define "competition," so the Court applies its ordinary meaning.  *United States v. Ohio*, 787 F.3d 350, 354–55 (6th Cir. 2015) (quoting *Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 285, 292–93 (Ohio 2011) (explaining that undefined words in a contract are "given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents" of the contract).  "Competition" is "the struggle for commercial advantage; the effort or action of two or more commercial interests to obtain the same business from third parties."

28

*Competition*, *Black's Law Dictionary* (11th ed. 2019); *see Competition*, *Merriam-Webster.com* (https://perma.cc/V7SV-A6J9) ("the effort of two or more parties acting independently to secure the business of a third party by offering the most favorable terms").

The Special Master acknowledged the OA language but concluded that there is "an open question" as to whether Tousey could compete with Federal *to its detriment*.  (ECF No. 320, PageID #18088).  Yet, how could Tousey "compete" with Federal either neutrally or beneficially (as opposed to detrimentally) and still be *in competition* with Federal as defined above?  An employee's competition with his employer during the employment relationship necessarily breaches the employee's duty of loyalty.  *Extracorporeal Alliance, LLC v. Rosteck*, 285 F. Supp. 2d 1028, 1044 (N.D. Ohio 2003) ("[The] duty of loyalty is breached when an employee competes with his or her employer.").  The two—a contractual right to compete and an extracontractual duty of loyalty—cannot coexist.  Further, neither party has advocated for the avoidance of the contract.

Tousey's status as Federal's employee (as distinguished from his position as a Techceuticals member) does not require consideration beyond this; neither party argues that Tousey's job responsibilities extended beyond those he performed for Techceuticals.  He could not, on one hand, compete with Techceuticals, and on the other, owe a duty of loyalty to Federal. The Court therefore **REJECTS** the R&R regarding Federal's breach of fiduciary duty claim and **GRANTS** Tousey's motion for summary judgment as to Count V.

### E.  Tortious Interference

Tousey objects to the Special Master's recommendation to deny his motion for summary judgment on Federal's tortious interference with economic relations claim against Tousey.  (ECF No. 323, PageID #18166–67).  Federal objects to the Special Master's recommendation to dismiss Federal's claim against the Corporate Defendants for tortious interference with third-party

29

economic relations.  (ECF No. 325, PageID #18597–98).  The elements of a claim for tortious interference with a business relationship or contract are: "(1) the existence of a business relationship or contract, (2) the defendant's knowledge of the business relationship or contract, (3) the defendant's intentional or improper action taken to prevent a contract formation, procure the contract's breach, or terminate a business relationship, (4) lack of justification or privilege, and (5) resulting damages."  *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 778–79 (Ohio Ct. App. 2021); *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999).

A claim for tortious interference with a business relationship is based on prospective, not existing, contractual relations.  *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780–81 (Ohio Ct. App. 2002).  A plaintiff must show that the defendant induced or otherwise purposely caused a third party not to enter, or continue, a business relationship with another, or perform a contract with another.  *Franklin Tractor Sales v. New Holland N. Am.*, 106 F. App'x 342, 344 (6th Cir. 2004).  "Fair competition" is not tortious interference.  *Kehoe Competent Sales Inc. v. Best Lighting Prods.*, 796 F.3d 576, 594 (6th Cir. 2015).  Competition is proper when the actor does not employ wrongful or improper means when competing with the plaintiff.  *Id*.

### 1. Federal's claim against Tousey for tortious interference with business relationships.

The Special Master recommended that this Court reject Tousey's argument regarding tortious interference for conduct after July 20, 2017, and grant summary judgment for tortious interference claims based on conduct before July 20, 2017, for which the statute of limitations expired.  (ECF No. 320, PageID #18093).  Neither party objected to the Special Master's recommendation to grant summary judgment as to those claims barred by the statute of limitations.  Tousey objected to the Special Master's recommendation to deny him summary judgment for the

30

claims that the statute of limitations does not bar. (ECF No. 323, PageID #18166).

Tousey argues that he is entitled to summary judgment because (1) Federal's evidence does not show a causal link between Tousey's actions and Federal's lost business; and (2) the R&R's reliance on the fact that the OA does not prohibit detrimental competition is incorrect for the same reasons addressed regarding the breach of fiduciary duty claim. (*Id.* at PageID #18166–67). In its opposition to Tousey's motion for summary judgment, Federal cited two emails as evidence of tortious interference. (ECF No. 299, PageID #15834). Federal alleged that Tousey interfered with customer opportunities when he "told customers that Techceuticals was closing and when he told Techceuticals' OEM sponsors that he was moving the lab to California without having discussed anything with Federal." (*Id.*) (citing ECF No. 273-13, PageID #10580). Federal alleged in another email, "Tousey told [Corporate Defendants] that he had 'spoken in confidence with several of [his] sponsors and they are all very ok with the idea of continuing with 'Mike Tousey' and coming to a new training center.'" (ECF No. 299, PageID #15834) (citing ECF No. 273-14, PageID #10581).

Federal also referred to the deposition of its Rule 30(b)(6) deponent, Mathew Hicks. (*Id.* at PageID #15835). Among other statements, Hicks testified: "After Tousey left, [Federal] learned that Tousey, for the benefit of corporate defendants, went directly to Federal's [contact] at IMA and intercepted . . . a sale that [Federal] had initiated," though Hicks could not elaborate on the sale. (*Id.* at PageID #9227).[3]

The Court agrees with the Special Master that there is a genuine issue of material fact as to whether Tousey was the cause of these disruptions to Federal's business relationships. The Hicks deposition directly implicates Tousey in interference with Federal's relationship with IMA. The emails Federal cites likewise demonstrate the Tousey was speaking directly with IMA and others

---

[3] Hicks stated that there are emails referenced in Federal's Trade Secret Disclosure that refer to this "stolen sale," but those emails are not identified in Federal's filings. (ECF No. 266, PageID #9227).

about "continuing with 'Mike Tousey'" as opposed to Techceuticals.  (ECF No. 273-14, PageID #10581).

Therefore, this Court **ADOPTS** the Special Master's recommendation as to Count VII for Tousey's conduct after July 20, 2017.  This Court **ADOPTS** the Special Master's recommendation as to Count VII for Tousey's conduct before July 20, 2017.  The Court concludes that there is a genuine issue of material fact as to whether Tousey tortiously interfered with Federals' business relationships after July 20, 2017.

### 2. Federal's claim against the Corporate Defendants for tortious interference with Federal's third-party economic relations.

The Special Master recommends that this Court dismiss Federal's tortious interference claim against the Corporate Defendants regarding Federal's third-party economic relationships because Federal does not cite any evidence to show that the Corporate Defendants intentionally caused the breaches/interruptions of business relationships.  (*Id.* at PageID #18102).   Federal objects, arguing that the Special Master neglected to apply the doctrine of respondeat superior, and that if Tousey committed tortious acts within the scope of his employment for the Corporate Defendants, then the Corporate Defendants are vicariously liable for those acts.  (ECF No. 325, PageID #18597).

Like its claim for misappropriation of trade secrets, Federal asserts a direct claim for tortious interference with business relations, not a vicarious one.  (ECF No. 220, PageID #6010). Federal claims that "Corporate Defendants willfully and intentionally interfered with Federal's economic business relationships by: (a) diverting sales from and purchases from Federal; (b) taking, using or disclosing Federal's confidential or proprietary information for their own purposes; (c) removing third party confidential or proprietary information from Federal; or (d) engaging in communications designed to interfere with Federal's relationships." (*Id.*).  Even when

32

the second amended complaint goes on to cite Corporate Defendants' employment relationship with Tousey, that fact is only referenced to impute knowledge to Corporate Defendants; Federal does not claim that Tousey, as Corporate Defendants' agent, tortiously interfered with Federal's business relationships.  (*Id.*).  Therefore, this Court **ADOPTS** the Special Master's recommendation as to Count IX.  Summary judgment is **GRANTED** as to Count IX.

### F.  Breach of Contract

The Special Master reviewed the Techceuticals Operating Agreement ("OA") (ECF No. 262-1, Ex. H, PageID #7315–41) and the Non-disclosure Agreement between Federal and the Corporate Defendants ("NDA") (ECF No. 278-3, PageID #10894–99).  (ECF No. 320, PageID 18057–58 & PageID #18104–07).  The Special Master recommended rejecting Tousey's argument as to Section 5.8.1 of the OA barring some claims.  (*Id.* at PageID #18057).  Tousey objected to that recommendation.  (ECF No. 323, PageID #18153).  The Special Master recommended granting summary judgment against Federal's claim that the Corporate Defendants breached the NDA.  (ECF No. 320, PageID #18104).  Federal objected to that recommendation.  (ECF No. 325, PageID #18598).

The parties cite Ohio and California contract law as to the NDA (*see* ECF No. 277, PageID #10819; ECF No. 303, PageID #16097–98) and Ohio law as to the OA (*see* ECF No. 262, PageID #7216–17; ECF No. 299, PageID #15821).  The elements for breach of contract in both States are: (1) existence of a contract; (2) the claimant's performance of the contract or excuse for nonperformance; (3) breach by the party defending the claim; and (4) resulting damage to the claimant.  *Richman v. Hartley*, 169 Cal. Rptr. 3d 475, 478 (Cal. Ct. App. 2014); *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).  Contract interpretation is a judicial function unless the interpretation depends on the credibility of extrinsic evidence.  *Garcia v. Truck Ins. Exch.*, 682

P.2d 1100, 1106 (1984); *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). Courts use words' ordinary meanings to interpret contracts and give effect to the parties' mutual intention when they contracted. *Gilkyson v. Disney Enters., Inc.*, 281 Cal. Rptr. 3d 539, 551 (Cal. Ct. App. 2021); *CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013). Summary judgment on a breach of contract claim is only proper if the contract or the provision in question is unambiguous or, in the event of an ambiguity, extrinsic evidence leaves no genuine issue of material fact and permits interpretation as a matter of law. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421–22 (6th Cir. 2008).

### 1. The Operating Agreement

The Special Master recommended rejecting Tousey's argument that this Court should dismiss claims barred by §5.8.1 of the OA because she believed that provision is ambiguous, and Tousey and Federal's arguments are equally plausible. (ECF No. 320, PageID #18057–58). Tousey objected to this recommendation, arguing that the language of the OA unambiguously favors his interpretation. (ECF No. 323, PageID #18153–18156).

Section 5.8.1 of the OA states:

> Except as otherwise provided in this agreement or in the [Ohio Limited Liability] Act, a Member shall not be liable, responsible, accountable, in damages or otherwise to any Member or to the Company for any act performed by such Member. The Company shall defend, indemnify and hold each Member harmless for any act performed by the Member within the scope of authority conferred on such Member by this Agreement unless the act is proved by clear and convincing evidence to have been undertaken with deliberate intent to cause injury to the Company, with reckless disregard for the best interest of the Company, or to be an intentional breach of this agreement.

(ECF No. 262-1, PageID #7333–34) (referring to Ohio Rev. Code Ann. § 1706 et seq. (West 2026)).

34

Tousey and Federal proffer different interpretations of this section.  Tousey argues that the first and second sentences should be read independently of one another, so that engaging in reckless or intentional conduct to the detriment of Federal only determines whether Federal will indemnify, defend, and hold harmless its members; not whether members can hold other members liable.  In other words, Federal and its members will not hold its members liable for their acts, but if other entities attempt to hold one of its members liable, Federal will only indemnify, defend, and hold harmless that member if the act was not done with intent to cause injury to Federal or with reckless disregard for Federal's best interests.  (ECF No. 262, PageID #7216–17; ECF No. 311, PageID #17816–17820; ECF No. 323, PageID #18153–56).  Therefore, Tousey argues that the OA bars liability for any claim which does not arise from the OA or the Act.

Federal argues that those two sentences must be read in conjunction with one another, and that their inclusion in the same provision evinces that.  (ECF No. 299, PageID #15821).  When read in conjunction, Federal argues that the OA does not release members from liability to other members for conduct not within the scope of authority of the OA, conduct "undertaken with deliberate intent to cause injury to the Company, with reckless disregard for the best interest of the Company," or intentional breaches of the OA.  (*Id.* at PageID #15820–24).

The Special Master concluded that both interpretations of the OA were reasonable, and that when material language in a contract is ambiguous, a fact finder should resolve this issue.  (ECF No. 320, PageID #18058).  In his objection to the R&R, Tousey asserted that his interpretation is correct, this time arguing that the fact two sentences in this provision derive their authority from different portions of the Ohio Revised Code further illustrates the parties' intent for a Court enforcing the contract to enforce those two sentences separately.  (ECF No. 323, PageID #18155).  While this may be additional evidence to support Tousey's interpretation, it renders Federal's

35

interpretation no less plausible.  The Court therefore **ADOPTS** the R&R with respect to Count III of the second amended complaint and concludes that a genuine issue of material fact precludes summary judgment on this count.

### 2.      Breach of the NDA

Federal brought a breach of contract claim against the Corporate Defendants, arguing that the Corporate Defendants breached the NDA by utilizing Federal's trade secrets and employing Tousey.  (ECF No. 220, PageID #6013).  The Special Master recommends that this Court dismiss Federal's breach of contract claim against the Corporate Defendants because (1) under the "plain meaning of the language in the NDA . . . the scope of the NDA is expressly limited to the *potential* business transaction or relationship between Corporate Defendants and Federal (ECF No. 320, PageID # 18107); and (2) the NDA does not contain a no-hire provision and Tousey's employment at Techceuticals was publicly known.  (*Id.*).

Federal objects to the Special Masters recommendation and argues that her interpretation (1) is based on an incorrect quote (ECF No. 325, PageID #18599), and that mistaken interpretation resulted in the Special Master's incorrect conclusion that the parties did not intend the NDA to cover their entire relationship (*id.* at PageID #18601); (2) erroneously determined that the NDA only applied to conduct prior to a January 10, 2021 transaction (*id.* at PageID #18602–04); and (3) failed to analyze the definition of "Confidential Information" to interpret information about "employees" as protected under the NDA and instead determined that Federal could not bring an action for breach based on hiring Tousey because the contract did not include a "no-hire" clause (*id.* at PageID #18604–05).  Federal then argues that the Special Master stopped short of analyzing Federal's evidence of multiple breaches because of her incorrect interpretation.  (*Id.* at PageID #18605–07).

36

### a.  The Special Master omitted the word "or" when quoting the NDA, then based her analysis on mistaken language.

The Special Master interpreted the introductory language of the NDA to determine the scope of the NDA.  She misquoted the NDA as covering "a potential business transaction relationship." (ECF No. 320, PageID #18105–06).  Relying on that misquoted language, and "repeated references to 'potential' transactions" throughout the NDA, the Special Master concluded that the NDA covers confidential information that the parties exchanged before the transaction and does not cover confidential information that the parties exchange after the transaction.  (*Id.* at PageID #18106).  Putting the NDA in context, the Special Master refined this statement, saying that "the NDA is limited to information exchanged leading to the parties entering into an arrangement for Federal to provide consulting services." (*Id.*).

Federal points out that the Special Master relied on misquoted language to come to this conclusion.  (ECF No. 325, PageID #18600).  The NDA does not say "potential business transaction relationship"; it says, "potential business transaction or relationship." (ECF No. 278-3, PageID #10895).  Federal then argues that the use of "or" creates ambiguity as to whether "potential" modifies the word "relationship," and that if it does not, then the contract would cover confidential information the parties disclose to each other during their entire relationship—not just that which the parties disclose before a transaction or relationship.  (ECF No. 325, PageID #18601).

The parties define the term "Transaction" in the introductory portion of the NDA and before the words of agreement.  (ECF No. 278-3, PageID #10895).  This introduction explains the context in which the parties entered into the NDA, and it does not include any duty or warranty. (*Id.*).  The parties define "Transaction" in the following sentence: "In connection with a potential business transaction or relationship ("Transaction") . . . ." (*Id.*).

37

Reading this sentence in isolation, it is ambiguous whether the definition of "Transaction" includes the word "potential."  The definition of "Transactions" is subject to multiple reasonable interpretations, including (1) potential business transaction or (not potential, but actual) relationship; (2) potential business transaction or potential relationship; (3) business transaction or relationship.  The rest of the NDA does not resolve this ambiguity.

The Special Master also said that "[t]he repeated references to 'potential' transaction . . . confirm the NDA does not govern the exchange of any confidential information made *after* the parties elected to enter into a transaction" to support her recommendation to grant summary judgment to the Corporate Defendants.  (ECF No. 320, PageID #18106).  The NDA references a "potential" Transaction one time: in the introductory language of the NDA.  (ECF No. 278-3).  However, if it did repeatedly refer to potential Transactions, then that would resolve the ambiguity in Federal's favor because "potential" could no longer be included in the definition of "Transaction" without creating a redundancy, i.e., a "potential potential Transaction."

This Court holds that summary judgment as to the scope of the NDA is not appropriate because the NDA's scope is ambiguous.  Therefore, this Court **REJECTS** the Special Master's recommendation to find that this NDA unambiguously only applies to conduct prior to a transaction between the Parties.  This Court denies the Corporate Defendants' motion for summary judgment as to the NDA.

### b.  The NDA was not silent as to employee information.

The Special Master also recommended dismissing this breach of contract claim because Tousey was an at-will employee, and the NDA does not contain a no-hire provision.  (ECF No. 320, PageID #18107).  Federal objects to this recommendation.  It argues that the definition of "Confidential Information" limits what Corporate Defendants could do with information they

38

gained by transacting with Federal and should have prevented them from hiring Tousey. (ECF No. 325, PageID #18605).

In their motion for summary judgment, Corporate Defendants argued that (1) the parties created an implied-in-fact contract by transacting for consulting services, and this implied-in-fact contract superseded the NDA (ECF No. 277, PageID #10822); (2) the reasonable expectation of the parties at the time of contract was that they were entitled to use the information provided in the consulting services and that, if this were not so, the consulting services would have served no purpose (*id.* at PageID #10823); and (3) Corporate Defendants learned about Tousey's exceptional work product via the consulting services, and because they were entitled to use the information from the consulting services, they were entitled to use that information to decide to hire Tousey. (*Id.*).

Corporate Defendants argument avoids grappling with the unambiguous language of the NDA. The NDA states:

> 5. **No Waiver.** The waiver by either party of a breach of or a default under any provision of this Agreement shall not be effective unless in writing and shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy.

(ECF No. 278-3, PageID #10897).

The NDA does not allow the parties to waive any duty under the NDA unless that waiver is in writing, and the waiver of a breach or default as to any provision does not mean that a party has waived any subsequent breach or default. (*Id.*). Had Corporate Defendants wished to waive their responsibilities under the NDA, they would have had to do so in writing. Corporate Defendants have not identified any such writing.

39

The NDA's definition of Confidential Information included data and materials relating to Federal's employees.  (*Id.* at PageID #10896).  Tousey was a Federal employee.  (ECF 272-4, PageID #10120) (stating in the First Amendment to the Business Operating Agreement that "Tousey will become an employee of Federal").  Therefore, if a factfinder resolves the ambiguity about the scope of the NDA in Federal's favor, then data and materials relating to Tousey are Confidential Information under the NDA.

The Special Master correctly identified Tousey as an at-will employee of Federal.  (ECF No. 320, PageID #18107).  However, the NDA was not between Tousey and Federal; it was between Federal and Corporate Defendants.  The fact that Tousey is an at-will employee does not mean that the Corporate Defendants could not contract away their otherwise legitimate right to hire Tousey with an NDA.

The Special Master correctly identified the fact that the NDA lacks a no-hire provision.  (*Id.*).  A no-hire provision could have been effective; the lack of a no-hire provision does not negate Corporate Defendants' duty to only use the Confidential Information for the NDA's stated purpose.  There's more than one way to skin a cat: while a no-hire provision could have prevented Tousey's hiring, the NDA's treatment of Confidential Information is another potential means for achieving the same end.

Finally, Corporate Defendants argued, and Special Master agreed, that the fact that Tousey was Federal's employee cannot be Confidential Information because that fact was generally available to the public.  (ECF No. 277, PageID #10824; ECF No. 320, PageID #18107).  The fact that Tousey was a Federal employee tells Corporate Defendants nothing about the quality of his work, or his presence and expertise in the industry.  Federal alleges that the Corporate Defendants did not decide to hire Tousey based only on the fact that he was Federal's employee; Federal

40

alleges that Corporate Defendants decided to hire Tousey after learning of his "capabilities, experience, qualifications, and talents as a trainer" after meeting and working with him. (ECF No. 303, PageID #16098). The latter information could fall within the realm of Confidential Information.

For the reasons stated above, the scope of this NDA is ambiguous, and that ambiguity creates a genuine issue of material fact. Therefore, this Court **REJECTS** the Special Master's recommendation as to Count X and **DENIES** Corporate Defendants' motion for summary judgment as to same.

## V.   CONCLUSION

The Court **STRIKES** pages thirty-one through thirty-four of Federal's objection to the R&R. The Court **ADOPTS** the R&R as to those matters to which neither Party objected, and as to those objections stricken from the record. For the sake of clarity, the Court rules as follows:

- The Special Master's recommendation to deny Corporate Defendants' motion for sanctions (ECF Nos. 239 & 242) is **ADOPTED**;

- The Special Master's recommendation to grant Federal's motion for leave to file revised declarations (ECF No. 318) is **ADOPTED**;

- The Special Master's recommendations regarding Tousey's motion for summary judgment (ECF No. 262), Federal's motion for summary judgment (ECF No. 274), and Corporate Defendants' motion for summary judgment (ECF No. 275) and motion to adopt the Special Master's recommendations regarding summary judgment (ECF No. 329) are **ADOPTED IN PART AND REJECTED IN PART AS FOLLOWS:**

41

<u>Federal's Motion for Summary Judgment</u>

o The Special Master's recommendation as to Counterclaim 1 concerning salary and relocation costs, reduced sales commission rate, and payment for repair services is **ADOPTED**. Federal's motion as to Counterclaim 1 as to these issues is **GRANTED**.

o The Special Master's recommendation as to Counterclaim 1 concerning reimbursement for Tousey's attendance at the Virtual Pharma expo is **ADOPTED**. Federal's motion as to this issue is **DENIED**.

o The Special Master's recommendation as to Counterclaim 1 concerning the "eTraining Series" proceeds accounting is **ADOPTED**. Federal's motion as to this issue is **DENIED**.

o The Special Master's recommendation as to Counterclaim 2 concerning salary and relocation costs and Tousey's virtual Pharma Expo attendance is **ADOPTED**.  Federal's motion as to Counterclaim 2 concerning these issues is **GRANTED**.

o The Special Master's recommendation as to Counterclaim 2 concerning Tousey's repair services is **ADOPTED**. Federal's motion as to Counterclaim 2 concerning this issue is **DENIED**.

o The Special Master's recommendation as to Counterclaim 3 is **ADOPTED**, and Federal's motion as to Counterclaim 3 is **GRANTED**.

o The Special Master's recommendation at to Counterclaim 4 is **ADOPTED**, and Federal's motion regarding Counterclaim 4 is **DENIED**.

o The Special Master's recommendation as to Counterclaim 5 is **ADOPTED**,

42

and Federal's motion regarding Counterclaim 5 is **DENIED**.

<u>Tousey's Motion for Summary Judgment</u>

o The Special Master's recommendation as to Counts I and IV of the second amended complaint concerning Trade Secret #1 is **REJECTED**, and Tousey's motion as to Counts I and IV relating to Trade Secret #1 is **GRANTED**.

o The Special Master's recommendation as to Counts I and IV of the second amended complaint concerning Trade Secret #2 is **ADOPTED**, and Tousey's motion as to Counts I and IV related to Trade Secret #2 is **DENIED**.

o The Special Master's recommendation as to Counts I and IV concerning Trade Secret #3 is **ADOPTED**, and Tousey's motion is **DENIED** regarding this issue.

o The Special Master's recommendation as to Count III of the second amended complaint is **ADOPTED**, and Tousey's motion as to Count III is **DENIED.**

o The Special Master's recommendation as to Count V of the second amended complaint is **REJECTED**, and Tousey's motion as to Count V is **GRANTED**;

o The Special Master's recommendations as to Count VII of the second amended complaint are **ADOPTED**. Tousey's motion as to Count VII is **GRANTED** with respect to any conduct occurring before July 20, 2017, and **DENIED** with respect to any conduct occurring after July 20, 2017.

- o The Special Master's recommendation regarding Tousey's motion as to Federal's request for punitive damages is **ADOPTED** and Tousey's motion as to this matter is **GRANTED**.

<u>Corporate Defendants' Motion for Summary Judgment</u>

- o The Special Master's recommendation as to Count II of the second amended complaint is **ADOPTED**, and Corporate Defendants' motion as Count II is **GRANTED**.

- o The Special Master's recommendation as to Count VIII of the second amended complaint is **ADOPTED**, and Corporate Defendants' motion as to Count VIII is **GRANTED**.

- o The Special Master's recommendation as to Count IX of the second amended complaint is **ADOPTED**, and Corporate Defendants' motion as to Count IX is **GRANTED**;

- o The Special Master's recommendation as to Count X of the second amended complaint is **REJECTED**, and Corporate Defendants' motion as to Count X is **DENIED**.

- Corporate Defendants' motion for leave to file objections to new arguments, citations, and evidence (ECF No. 329) is **DENIED AS MOOT**; and

- Corporate Defendants' motion to modify or clarify the Special Master's Order (ECF No. 331) is **DENIED AS MOOT**.

The following claims remain for trial:

| Complaint | Counterclaim |
|---|---|
| Counts I and IV – Trade Secrets #2 and #3; | Counterclaim 1 - reimbursement for Tousey's attendance at the Virtual Pharma Expo; "eTraining Series" proceeds accounting; |
| Count III | Counterclaim 2 – Tousey's repair services |
| Count VI | Counterclaim 4 |
| Count VII – conduct occurring after July 20, 2027 | Counterclaim 5 |
| Count X | |

For these reasons, the Special Master's R&R is **ADOPTED IN PART AND REJECTED**

**IN PART.**  The referral to the Special Master is **TERMINATED.**

**IT IS SO ORDERED.**

**Date July 31, 2026**

_(signature)_

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**